## SMITH *vs.* SHORT.

[ACTION ON ACCOUNT FOR BOARD AND LODGING.]

1. *Constitutionality of act of congress requiring stamp on process of State courts.*—Congress has not the constitutional power to impose a tax on the process or proceedings of the State courts; consequently, the act of congress approved June 30, 1864, providing for the internal revenue of the government, so far as it requires a stamp to be affixed on legal process issuing from the State courts, is unconstitutional and void. (BYRD, J., holding that said act did not apply to process issued from the State courts.)

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by Thomas Short, against Joseph Smith, to recover the sum of three hundred dollars, alleged to be due for "board and lodging furnished by plaintiff to Hartsfield, wife, and servant, at the request of the defendant"; and was commenced on the 24th November, 1864. At the November term, 1865, judgment by default was rendered, for want of a plea, and a writ of inquiry was awarded; and the writ of inquiry was executed at the January term, 1866. The judgment of the court is now assigned as error, on account of the failure to affix to the process an internal-revenue stamp as required by act of congress of the United States.

W. BOYLES, for appellant.
DARGAN & TAYLOR, *contra.*

JUDGE, J.—The question to be decided in this case is, whether congress has the power to tax legal proceedings in the State courts. The first clause of the 8th section of the 1st article of the constitution confers on congress the power of taxation, in the following words: " The congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts, and provide for the common defense and general welfare of the United States ; but all duties, imposts, and excises, shall be uniform throughout the United States." The power thus conferred, though not unlimited, but restricted in terms to specific objects—viz., the payment of the public debts, and providing for the common defense and general welfare—is, nevertheless, " co-extensive with the powers, wants, and duties of the national government." For the construction of the powers of congress in regard to taxation, see *Hylton v. The United States*, 3 Dallas, 171; *Loughborough v. Blake*, 5 Wheaton, 317; 2 Story on the Constitution, § § 904, 905, 930; 1 Kent's Com. 254, 267.

Conceding the power of congress over the subject to be as plenary as has ever been claimed for it, yet instruments of the State administration have never been subjected to specific taxation, by way of stamp or license duties, until the passage of the internal-revenue act of June 30, 1864; although, in 1797, congress passed a stamp act, very general in its character, as to the subjects of taxation.—1 Story's Laws U. S. 466. The question was then presented, as to the power of congress even to require a license from attorneys to practice in the State courts, it being conceded that it might to practice in the United States courts ; and the law then enacted respected, in this regard, the rights of the States.—*Warren v. Paul*, 4 Am. Law Reg., N. S., 157 ; 2 Benton's Debates, 155.

The act of June 30th, 1864, imposes a tax on the right to justice in the State courts, by requiring stamps upon legal documents, as follows: " Writ, or other original process by which suit is commenced in any court of record, either of law or equity, fifty cents. Where the amount claimed in a writ, issued by a court not of record, is one hundred dollars or over, fifty cents. Upon every confes-

sion of judgment, or *cognovit*, for one hundred dollars or over, (except in those cases where the tax for the writ of a commencement of suit has been paid,) fifty cents. Writs, or other process on appeal from justices' courts, or other courts of inferior jurisdiction to a court of record, fifty cents. Warrant of distress, when the amount of rent claimed does not exceed one hundred dollars, twenty-five cents. When the amount claimed exceeds one hundred dollars, fifty cents. *Provided*, That no writ, summons, or other process, issued by, and returnable to, a justice of the peace, except as hereinbefore provided, or by any police or municipal court having no larger jurisdiction as to the amount of damages it may render than a justice of the peace in the same State, or issued in any criminal or other suits commenced by the United States or any State, shall be subject to the payment of stamp duties : *And provided further*, That the stamp imposed by the foregoing schedule B on manifests, bills of lading, and passage tickets, shall not apply to steamboats or other vessels plying between the ports of the United States and ports in British North America. Affidavits in suits or legal proceedings shall be exempt from stamp duty."—2 Brightley's Digest, 272.

It has been the generally received opinion, that the government of the United States is one of special and enumerated powers ; that while in the exercise of these powers, for national purposes, it is vested with supremacy, yet the State governments, being in the full possession of all their unsurrendered powers of sovereignty, are, within their sphere of action, likewise supreme ; and that the States are to have independent civil and judicial systems of their own, which, if not incompatible with the constitution of the United States, nor with the laws made in pursuance thereof, are not to be encroached upon or controlled by congress, but are to have free and unmolested existence.

The several States having the inherent power to establish and continue in existence judicial tribunals of their own, and the exclusive right to regulate, within the pale of the constitution, the proceedings in such tribunals, no legislation by congress, in derogation of these rights, can be constitutional. That the imposition of the tax on judi-

cial process of the State courts is an unconstitutional innovation of the State prorogatives named, we do not doubt; for, if the power to impose such a tax exists, it is of its nature unlimited, and may be so exercised as to result, in effect, in the complete subversion of the State tribunals, and consequent annulment of that provision of our State constitution which had its origin in *Magna Charta*, and which declares, that "All courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice administered, without sale, denial, or delay."—Bill of rights, § 14.

A question, analogous in principle to the one we are considering, was passed upon by the national tribunal of last resort, in the case of *McCulloch v. The State of Maryland*, 4 Wheaton, 316. In that case, it was held, Chief-Justice Marshall delivering the opinion of the court, that the stock of the United States Bank was exempt from taxation by the States, because of the bank being a constitutional means employed by the government of the Union to execute its constitutional powers. The arguments put forth to sustain this proposition are unanswerable, and apply with equal force to the question involved in the case before us.

In the case cited above, Chief-Justice Marshall announced the following propositions as not to be denied, viz.: "That the power to tax involved the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control." And the same distinguished judge said further: "If the States may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent rights; they may tax the papers of the custom-house; they may tax *judicial process;* they may tax all the means employed by the government, to an excess which would defeat all the ends of government."

Smith v. Short.

May we not say, with equal propriety, if congress may tax one instrument employed by the State governments in the execution of their undoubted powers, it may tax any and every other instrument; it may tax new or amended State constitutions; it may tax, in legislative proceedings, bills, journals, and laws; it may tax State commissions; it may tax minute-entries, judgments, and decrees of the courts; it may tax ballots in elections; it may tax all the means employed by the State governments, to an excess which would defeat all the ends for which State governments exist.

The power of taxation remains in the States, concurrent and co-extensive with that of congress; with the sole exception of duties on imports and exports, which the States can not impose except by the consent of congress.—2 Story on Con. § 937. Therefore, congress has no more the power to tax judicial process of the State courts, than have the States to tax judicial process of the national courts.

Our conclusion as to the constitutionality of the tax in question, is sustained by able authority, direct to the point. In a late number of the American Law Register, (vol. 4th, p. 165,) Judge Redfield, late chief-justice of the supreme court of Vermont, and eminent as a profound jurist, says: "It has seemed to us most unquestionable, from the very first, that congress could not impose a specific tax of any kind upon any of the indispensable governmental functions of the States, whether by way of license to the attorneys and counsellors practicing in State courts, or stamp duties upon their processes." Judicial determinations, too, of the identical question involved, in harmony with our own conclusion, have recently been made by the supreme courts of several of the States; but to the official reports of the cases we have not had access. And should the question ever come before the supreme court of the Union, we believe these State adjudications will be sustained by that shield of the constitution.

It should be an object of the first importance to preserve, free and untrammelled, the jurisprudence of the several States. As Chancellor Kent has said: "The judicial power of the United States is necessarily limited to national ob-

jects. The vast field of the law of property, the very extensive head of equity jurisdiction, and the principal rights and duties which flow from our civil and domestic relations, fall within the control, and we might almost say the exclusive cognizance, of the State governments. We look essentially to the State courts for protection to all these momentous interests. They touch, in their operation, every cord of human sympathy, and control our best destinies.   *   *   *   *   *   *   *   The *true interests*, and the *permanent freedom* of this country, require that the jurisprudence of the individual States should be cultivated, cherished, and exalted, and the dignity and reputation of the State authorities sustained with becoming pride." —1 Kent's Com. 445-446.

Let the judgment of the circuit court be affirmed.

BYRD, J.—I concur in the result of the opinion of the court, but by a very different line of argument from the one taken therein. I do not assent to all the reasoning of the opinion, but deem it unnecessary to point out and discuss such portions as I do not approve. I am content to say that, admitting, for the sake of the argument, that the stamp act, if applicable to process of the State courts, would be unconstitutional, yet there is a rule of law which requires that courts should *never* impute to the legislative department of the government an intention to violate the constitution, nor *even* a violation of it, when any reasonable construction can be given to its enactments without producing such a result.

The language of the act, I admit, is very general; but, in my opinion, it can be legitimately interpreted as *only* applicable to process issued by the courts of the United States, held in the States, the territories, and the District of Columbia, as also to such issued by the justices and police courts of the latter. In a form of government like ours, where there are two—the State and national—legislative bodies clothed with sovereign powers, the enactments of neither should ever be held to affect the other, or any department of the other, unless the act expressly does so. It should never be done by implication, and especially if, in doing so,

it would only involve the enacting power in a charge of having violated the fundamental law of the land. The courts should be astute to avoid such a result, particularly where no injury is done to any one, or to either government. To illustrate: should congress, or the legislature of the State, enact a law, which in words "prohibits *all* courts from performing judicial acts on holy days", or provides "that *no* court shall do so", or enjoins "*every* court to do a certain thing,—in all such cases, the terms "*all courts*", "no court", "every court", would only refer to the courts of the sovereignty by whose legislative department the law was enacted; and so, if the terms "no officer", "every officer", &c., were used. In the stamp act, neither the terms "State courts", nor any equivalent ones, are used; and I therefore hold, that the act does not apply to process issued by these courts; and there is then no impropriety in my giving, or even intimating, an opinion on a question which does not exist, or arise in this case; that is, would the act be constitutional if it embraced process issued by the State courts? and I shall not volunteer one. If it were construed to embrace State process, and therefore held unconstitutional, and if, on the other hand, it could be construed not to include such process, I should certainly resort to every rule of construction to avoid the former and adopt the latter. I think the latter is plain and clear enough to relieve me from a consideration of the former.