## IN THE MATTER OF THE TAXATION OF THE SALARIES OF JUDGES.

TAXATION—*Judges—Salaries—Constitution of North Carolina, Art. 4, Sec. 23—Income Tax.*

> Where the constitution provides that the salaries of judges shall not be diminished during their continuance in office, the salaries are exempt from taxation.

*To* THOS. S. KENAN, *Clerk of the Supreme Court.*

DEAR SIR:—I herewith hand you the correspondence between Attorney-General Gilmer and myself with regard to the right of the Legislature to tax the salaries of the Judges. And in doing so I wish to say that it is a full, able and, indeed, an exhaustive discussion of the subject involved, and in my opinion a correct decision of the question.

It has been read to the Court sitting in conference and approved without a dissenting voice. It was then ordered by the Court that the Attorney-General's opinion, together with my letter to him and this letter to you, be filed and preserved among the records of your office, and be published in the 131st volume of the Supreme Court Reports.

It was then resolved that the Court would consider this opinion of the Attorney-General as settling the matter therein discussed, to the same extent as if it were the opinion of this Court:

Very respectfully,

D. M. FURCHES,
*Chief Justice.*

December 18, 1902.

IN THE MATTER OF THE TAXATION OF THE SALARIES OF JUDGES.

NORTH CAROLINA—Supreme Court.

RALEIGH, November 19, 1902.

HON. ROBERT D. GILMER,

Attorney-General of North Carolina.

DEAR SIR:—The members of this Court have heretofore been of opinion that their salaries were not subject to taxation, and for that reason (except one Judge for the last two years) have not listed them for that purpose. But the Corporation Commission has decided that they are, and has directed the County Commissioners to proceed to collect the same. And as all the members of this Court, as are also all the Judges of the Superior Courts, are interested in the question, which would make it embarrassing if not incompetent for them to sit upon its hearing; therefore, as you are the legally constituted adviser of the government, the Court has decided to ask your opinion upon this important question. And for that purpose the Court has requested me to write you this letter, and whatever your opinion may be, it will be filed for the guidance of this Court in the matter.

Hoping you will favor the Court with such opinion at as early a day as it may suit your convenience, the Court respectfully awaits the same.

Very respectfully, etc.,

D. M. FURCHES,

Chief Justice Supreme Court North Carolina.

December 16, 1902.

To the HON. DAVID M. FURCHES,

Chief Justice of the Supreme Court of North
Carolina, Raleigh, N. C.

DEAR SIR:—I beg to acknowledge the receipt of your favor of recent date, in which my opinion is asked upon a

question involving the liability of the official salaries of the Chief Justice and the Associate Justices of the Supreme Court of this State to taxation. In discharge of the duty imposed upon me by section 3363, sub-section 4 of The Code, I have the honor to submit the following:

The doctrine that the power to tax is an essential element of Government, and that the Legislature, in its exercise, is limited only by constitutional provisions, is elementary and fundamental. The power to tax the salary of a State officer is admitted, unless there is some provision in the organic law forbidding it. Such a prohibition · upon legislative authority, if any exists, must appear in the Constitution of the State. Section 18, Article 4, of that instrument is in the following words:

"The General Assembly shall prescribe and regulate the fees, salaries and emoluments of all officers provided for in this article, but the salaries of the Judges shall not be diminished during their continuance in office." Section 21 of the Constitution of 1776 provided "that the Governor, Justices of the Supreme Courts of law and equity  *  *  * shall have adequate salaries during their continuance in office." Revised Code of North Carolina, page 16.

In the amended Constitution of 1835, the constitutional provision with reference to the salaries of judicial officers was changed and the following article enacted: "The salaries of the Judges of the Supreme Court, or of the Superior Courts, shall not be diminished during their continuance in office." Revised Statutes of North Carolina, Vol. I, section 2, page 23. And the same inhibition against diminution appears in the article quoted above from the Constitution adopted in 1868. Under the Constitution of 1776, it will be observed that the Judges were to receive "adequate salaries." "What was an adequate salary," remarked Attorney-General Bachelor, in 1856, in passing upon a question simi-

lar to the one submitted, "was, *ex necessitate* to be determined by the Legislature, which had the power of fixing it. As this was a discretionary power, that body could declare an "adequate salary" to be any sum it thought proper.   This power was liable to abuse, and though it would have been a violation of the spirit of the Constitution to have fixed these salaries at a sum clearly inadequate, yet the Legislature, being unchecked by any other department of the government in the exercise of this discretion, could violate at will the spirit of this part of the Constitution.   By it the power of reducing the salaries of the Judges during their continuance in office, is taken away.   They may be increased, but cannot be diminished.   But to secure them effectually against diminution, this provision should extend to indirect as well as to direct legislation. The power to lessen these salaries by direct legislation is now nowhere claimed; yet the passage of this act is an assertion by the Legislature of the power to diminish them indirectly; and if the Legislature has such power it can be used to any extent to which, in its wisdom, it may see proper to carry it."

While Attorney-General Bachelor, in his opinion, made no reference to the case of *McCulloch v. State of Maryland*, 4 Wheaton, page 316-207, his argument is sustained by the reasoning of Chief Justice Marshall, who delivered the opinion of the Court in that case—"that the power to tax involves the power to destroy."   This doctrine is exemplified in many cases decided by the Supreme Courts of other jurisdictions, declaring that the internal revenue acts of the Federal Government, requiring stamps on processes of State Courts are unconstitutional interferences with their proceedings.

*Smith v. Short,* 40 Ala., 385; *Craig v. Dimock,* 47 Ill., 308; *Warren v. Paul,* 22 Ind., 276; *Fifield v. Close,* 15 Mich., 505; *Walton v. Bryenth,* 24 Howard's Practic? Re-

ports, 357; *Jones v. Keep,* 19 Wis., 369; *Bumpass v. Tag-gart,* 26 Ark., 298; 7 Am. Rep., 623; *Forcheiner v. Holly,* 14 Fla., 239; *Latham v. Smith,* 45 Ill., 29; *Wallace v. Cravens,* 34 Ind., 534; *Pargoud v. Richardson,* 30 L. An., 1286; *Sporrer v. Eifler,* 48 Tenn., 633; *Carpenter v. Snelling,* 97 Mass., 452; *Davis v. Rochardson,* 45 Miss., 499; 7 Am. Rep., 732.

The principle announced in *McCulloch v. State of Maryland, supra,* has been affirmed by the Supreme Court of this State. In *King v. Hunter,* 65 N. C., at pages 612-613 (6 Am. Rep., 754) Reade, J., says: "It has been considered how far an office or officer may be taxed. And it is considered as settled that the State has no power to tax an officer of the United States, or *vice versa;* because 'the power to tax includes the power to destroy;' as was said by Chief Justice Marshall in *McCulloch v. State of Maryland,* 4 Wheaton, page 207. And if a State were allowed to tax a United States officer one dollar, it might tax him to the full amount of his salary, and thus 'arrest all the measures of the Government.' And so the United States can not tax a State officer for the same reason." Upon a similar principle the Federal Courts have held that the United States Government can not tax the income of State officials.

The case of *United States v. Ritchie,* Federal cases, Book 27, Case 16,168, involved the right of the Federal Government to tax the income of the State's attorney for the county of Frederick, in the State of Maryland. The Court held that "the United States has no more right to tax these agencies than the State government has to tax the means and agencies to carry on the Federal Government." In *Day v. Buffinton,* Federal Cases, Book 7, Case 3,675, Clifford, Circuit Justice, held that "the salary of a Judge of the Court of Record, payable out of the Treasury of the State, is not legally taxable as income under the internal revenue laws of

the United States." This ruling was affirmed by the Supreme Court of the United States. 78 U. S., 113.

In *Freedman v. Sigel*, Federal cases, Book 9, Case 5,080, it was held that "the United States can not impose a tax on the salary of a Judge of a Superior Court of the city of New York by imposing a tax upon such salary as the income of such Judge."

In *Dobbins v. Commissioners of Erie County*, 16 Peters, at page 450, Mr. Justice Wayne, speaking for the Supreme Court of the United States, says: "Does not a *tax* by a State upon the office, diminishing the recompense, conflict with the law of the United States, *which secures it to the officer in its entireness? It certainly has such an effect.*"

In the foregoing cases the decisions of the Courts rest upon the principle that the Government of the United States has no right to tax the means, agencies and instrumentalities of the State government, and neither has the State government the right to tax the means, agencies and instrumentalities of the Federal Government. In the case of *Sweatt v. Boston H. and E. R. Co.,* Federal cases, Book 23, case 13,684, Clifford, Circuit Justice, says: "By the word means' is meant the *revenue, taxes* and public securities, as applied both to the United States and the several States, and the prohibition extends to the salaries of the ＊ ＊ ＊ judicial officers" ＊ ＊ ＊

Section 8, Article 1, of the Constitution of North Carolina provides that: "The legislative, executive and supreme judicial powers of the Government ought to be forever separate and distinct from each other"—that each shall act within its own sphere, just as fully "as if the line of division was traced by landmarks and monuments visible to the eye."

The constitutional provision hereinbefore recited effectually removes from the domain of legislative authority the enactment of any statute, the effect of which is to diminish,

either directly or indirectly, the official salary of a judicial officer during the continuance of his term. When the Constitution imposes a limitation upon legislative action, it must be assumed that the people who framed the instrument, through their representatives, regarded the matter as sufficiently important to be removed from the control of their agents, unless sitting as members of a body of equal dignity with that which enacted the constitutional provision. The Convention of 1868 seems to have had in mind that principle, recognized from the beginning by our Courts, that the unrestrained right to tax involves in law the right to destroy. The word "unrestrained" is used with due regard to its significance. *If the power to tax is conceded, the barriers erected by the constitutional limitation are swept away,* and one branch of the State government is placed at the mercy of another. If the General Assembly has the power to impose a tax of one per cent on the official salary of a judicial officer, upon the same principle, it could lay a duty which would cripple, if not completely paralyze, the whole system of the administration of justice in State tribunals.

It is freely admitted that, in the absence of dire political revolutions, the exercise of such destructive power on the part of one branch of the government toward another is not likely to be invoked; but the improbability of the non-exercise of the power does not affect the principle. Upon this point I quote the following language from the Supreme Court of Michigan: "The argument that such prohibitory action (the power to tax) is improbable, has no force whatever in determining the existence or non-existence of the power. There is no legislative power possessed by any Legislature which it may not lawfully carry to an extreme, where extreme action is deemed expedient by the majority of the members. And where a power of destruction has been conferred, it is always possible that it may be exercised, al-

though it may be very improbable." The foregoing citation is from the case of Fifield and Close, *supra,* and that learned jurist, Judge Cooley, concurred in the opinion of the Court.

The Federal Constitution contains a provision similar to that appearing in the Constitution of our own State—that the salaries of the Judges shall not be diminished during their continuance in office. Under an act of Congress, imposing a tax of three per cent on the salaries of all the officers in the employment of the United States Government, the Treasury Department held that judicial officers were embraced within its terms. On February 16, 1863, Judge Taney, who was then Chief Justice of the Supreme Court of the United States, addressed a letter to the Honorable, the Secretary of the Treasury, and from it the following paragraph is taken: "The act in question, as you interpret it, diminishes the compensation of every Judge three per cent; and if it can be diminished to that extent *by the name of a tax,* it may, in the same way, be reduced, from time to time, at the pleasure of the Legislature." It is true that the act of Congress, passed upon by Chief Justice Taney, as well as in the case of *Commonwealth v. Mann,* 5 Watts and Sergeant, page 403, cited by Attorney-General Bachelor (Appendix, 48 N. C. Report), the tax levied was deducted from the compensation fixed by law and retained in the Treasury. But in what way the method of collecting the tax imposed upon the salary affects the question involved, I am utterly unable to perceive. The principle announced by Chief Justice Taney, as well as by the Supreme Court of Pennsylvania, in *Commonwealth v. Mann, supra,* operates upon the power to tax, and not upon the incidental means employed to collect.

In *City of New Orleans v. Lea,* it is held by the Supreme Court of Louisiana (14 La. An., 197), that "the article of the Constitution which declares that the Judges, both of the

Supreme and inferior Courts, shall at stated times receive a salary, which shall not be diminished during their continuance in office, exempts the salary of a Judge from taxation." The case of *McCulloch v. Maryland, supra,* is cited, and the Court says: "If the right to tax the salary of Judges be conceded, there would be no limitation, but the discretion of the Legislature to do it, to such an extent as virtually to abolish the means of conducting the judicial department. Its existence ought not to depend upon the will of a co-ordinate department."

I find only one case which holds that the salary of a Judge, protected by a constitutional provision similar to ours, is liable to taxation, and that is the case of *The Commissioners of Northumberland County v. Chapman,* decided by the Supreme Court of Pennsylvania in 1829—2 Rawls, page 73. The opinion is brief, and no authorities are cited. The doctrine laid down is not in consonance with the reasoning employed by the same Court fourteen years later in *Commonwealth v. Mann, supra.*

Two, at least, of my predecessors in office have held that the official salary of a Judge is not liable to taxation: Attorney-General Bachelor, *supra,* and Attorney-General Walser, Public Documents 1899, Document 8, page 95, and so far as I am advised, this administrative construction of the Constitution has, until recently, been accepted as the correct interpretation of the Constitution.

Following the paragraph hereinbefore cited from *King v. Hunter, supra,* Mr. Justice Reade, speaking for the Supreme Court of our State, says: "It is not doubted, however, that the State may tax any other property, the object being revenue and not the destruction of the office. But the people have been so jealous even of this power, that it is provided in the Constitution that the salaries of the most important officers shall not be altered during their term of office, and this

is understood to exempt their salaries from taxation, because to tax is to diminish, or it may be, to destroy." The learned Justice was considering the question, "how far an office or officer may be taxed," and the paragraph, viewed in its setting, has more than the force of a mere *dictum*.

Chancellor Kent says: "We look essentially to the State Courts for protection. They touch, in their operation, every chord of human sympathy and control our best destinies. It is their province to reward and to punish. Their blessings and their terrors will accompany us to the fireside and be in constant activity before the public eye." In view of these important functions abiding in our judicial tribunals, we must conclude, that when the people, in convention assembled, declared that the salaries of the Judges should not be diminished during their continuance in office, they meant to withdraw from taxation, either directly or indirectly, such salaries, "because the power to tax is to diminish, or it may be, to destroy." Very respectfully,

ROBT. D. GILMER,
*Attorney-General.*