STATE EX REL. WICKHAM, Appellant, vs. NYGAARD, County Clerk, Respondent.

*December 11, 1914—January 12, 1915.*

*Courts: Judges: Disqualification by interest: Constitutional law: Income tax: Salaries of public officers: Circuit judge: Appeal from board of review: County assessor.*

1. A collateral or indirect interest in a controversy will not disqualify a judge from hearing and determining the same, where there is no other judicial officer or body before whom the case can be taken for decision.

2. The provision of sec. 9, art. I, Const., that every person is entitled to a certain remedy in the law for all injuries, etc., is above and superior to any inconsistent common-law rule that existed when the constitution was framed, as well as any statute enacted since that time.

3. *Jefferson Co. v. Milwaukee Co.* 20 Wis. 139, doubted.

4. The amendment to sec. 1, art. VIII, Const., providing that "taxes may be imposed on incomes," authorized the legislature to tax incomes in any case where the power rests in the state to impose such a tax, and hence includes power to tax the salaries of public officers.

5. The provision of sec. 1087m—2, Stats. 1913, exempting salaries

"where the taxation thereof would be repugnant to the constitution," did not show an intention on the part of the legislature to exempt salaries of public officers, provided they were constitutionally taxable.

6. *It seems* that the salaries of federal office holders residing in this state are not subject to taxation by the state.

7. A circuit judge is a state officer, and as such his salary is subject to taxation under the state income tax law. The imposition of such tax after his term of office has commenced does not violate sec. 26, art. IV, Const., providing that the compensation of any public officer shall not be increased or diminished during his term of office, because that section must be read in connection with the amendment to sec. 1, art. VIII.

8. A county income tax assessor, if dissatisfied with the decision of the board of review of income assessments, has the right, under sec. 1087m—19, Stats., to appeal therefrom to the state tax commission.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

For the appellant there were briefs by *James Wickham, in pro. per.,* and oral argument by *W. P. Crawford.*

The *Attorney General,* for the respondent.

BARNES, J. This is a *certiorari* proceeding brought by the relator to set aside an income tax assessment levied by the taxing officers in the year 1913 on the salary received by the relator as circuit judge for the year 1912. The assessor of incomes assessed the relator's salary. The latter appeared before the board of review and objected to such assessment. The objection was sustained by the board, and the income tax assessor appealed to the state tax commission from such decision. The commission, without hearing or notice, reversed the decision of the board of review and ordered that said income be taxed. Thereupon the county clerk certified to the city clerk for collection a tax computed on the relator's salary. The proceeding was tried in the superior court of Douglas county, and judgment went against the relator, from which judgment he appeals to this court.

The relator makes two contentions: (1) IIis salary as a state officer was not subject to taxation, and (2) Teall, the income tax assessor, had no power to appeal from the decision of the board of review, and the tax commission had no jurisdiction to act on the unauthorized appeal.

A question which is not raised, but which is obviously involved, will be first disposed of, and that is the competency of this court to hear and decide the pending controversy. The attorney for Judge WICKHAM stated on the oral argument that he was instructed by his client to waive any objection as to the qualification of the members of the court to decide the case and to consent that it might be passed upon. The attorney general expressed neither assent nor dissent, further than consent might be implied from silence and from filing a brief and participating in the oral argument without objection. The members of this court are not directly interested in this lawsuit, but it is none the less true that the settlement of the main question of law involved will affect the majority of the court. If .it is settled that Judge WICKHAM's salary is exempt from assessment for income tax, then the salary of every other public officer is exempt during his term, where such term began before the passage of the Income Tax Law. The question is: Does the fact that the members of the court, or a majority of them, may or will be affected in a financial way by the decision which the court is called upon to make disqualify them from acting? It is a question which not infrequently arises, although seldom in so pronounced a way as in the present instance. Cases often come before the court which affect the taxpayers of the city of Madison and of Dane county. A majority of the members of the court pay taxes in the city of Madison and are affected like other taxpayers by such litigation. The state has had many cases affecting the interests of all the taxpayers in it, including, of course, the members of the court. It is probable that a majority of the court carry life insurance in one or more mutual insurance companies and have some remote interest as policy-

holders in the result of litigation affecting such companies. Other instances might be referred to which present a situation not unlike the one which presently confronts us.

Sec. 2579, Stats., provides: "In case any judge of any court of record shall be interested in any action or proceeding in such court . . . such judge shall not have power to hear and determine such action or proceeding or to make any order therein, except with the consent of the parties thereto."

It has been held under this section that the interest which disqualifies must be a pecuniary one. *Hungerford v. Cushing,* 2 Wis. 397.

In *Jefferson Co. v. Milwaukee Co.* 20 Wis. 139, a motion for a change of venue was made on the ground that the circuit judge was interested as a taxpayer in the controversy. The application was denied and such ruling was held to be erroneous. It was said that the interest of the circuit judge was so trifling that in the absence of an objection being made to his sitting he would be held qualified. It was also said that had he been called upon to act from necessity and to prevent a failure of the administration of justice, he would have been competent notwithstanding the objection. To the same effect on this latter point is *State ex rel. Cook v. Houser,* 122 Wis. 534, 607, 100 N. W. 964.

The soundness of the decision in *Jefferson Co. v. Milwaukee Co., supra,* is subject to grave doubt. The statute was designed to reach substance, not shadows. The bare fact was made to appear that the judge was a taxpayer. The amount of the claim was $652.41. A distribution of this sum among the taxpayers of Milwaukee county might increase the judge's taxes from one to five cents—hardly any more. Such an unsubstantial interest should hardly have been held to be a disqualification. We do not wish to be understood as approving the decision in this opinion.

The point under discussion is exhaustively treated in *Matter of Ryers,* 72 N. Y. 1, where many of the leading cases on the subject are cited and discussed, and the conclusion is

reached that a collateral or indirect interest in the controversy does not disqualify where there is no other judicial officer or body before whom the case can be taken for decision.

There is an additional and very cogent reason in this case why the court should decide the controversy. Sec. 9 of art. I, Const., reads as follows:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

Now it is self-evident that if an unlawful tax has been assessed against the petitioner, he has suffered a wrong and that some of his property will be taken by means of unjust taxation. If he cannot go into any court to assert his right, he is absolutely deprived of the remedy which our organic law gives him. That law is above and beyond any inconsistent common-law rule that existed when the constitution was framed, as well as any statute enacted since that time.

We do not lay down any hard-and-fast rule as to what interest disqualifies a judge from hearing a cause, but content ourselves with saying that we conclude that it is our plain duty to hear and decide the case before us so that there may be no denial of justice. Any public officer has the right to raise the question that is here raised and to have it decided, no matter how distasteful it may be to judges to sit in a case where they may be affected by the result of the decision reached. We now pass to the questions argued in the briefs and at the bar.

1. Sec. 26 of art. IV of the state constitution contains this provision: "nor shall the compensation of any public officer be increased or diminished during his term of office."

The Income Tax Law, paragraph "c" of sec. 1087m—2, provides:

"All wages, salaries or fees derived from services; provided that compensation to public officers for public service shall

not be computed as part of the taxable income in such cases where the taxation thereof would be repugnant to the constitution."

It is conceded that the tax was levied during the relator's term of office and it is beyond question that he was a public officer. *Milwaukee Co. v. Hackett,* 21 Wis. 613; *State ex rel. Martin v. Kalb,* 50 Wis. 178, 6 N. W. 557.

Briefly stated, the position of the relator in reference to the above quoted constitutional provision is this: If the state gives a salary with one hand and takes part of it away with the other, it diminishes the salary to the extent of the part taken, no matter under what pretense it is taken. The state may if it sees fit collect its entire revenue from a tax on incomes, and thus take away a large portion of the salary which it pays its officers. The power to tax involves the power to destroy (*McCulloch v. Maryland,* 4 Wheat. 316, 441), and if a state may evade the constitutional provision referred to by using the taxing power, the safeguard provided has little force or vitality. The following authorities are cited as being directly in point: Opinion of TANEY, C. J., on National Income Tax (U. S.) 39 L. ed. 1155; *Taxation of Salaries,* 131 N. C. 692, 42 S. E. 970; *Comm. v. Mann,* 5 W. & S. 403; *New Orleans v. Lea,* 14 La. Ann. 197; 23 Cyc. 531, 532, note 31; 13 Op. Att'y Gen. U. S. 161; Op. Att'y Gen. Wis. 1912, 972.

Other cases cited as establishing the principle contended for are *Dobbins v. Erie Co.* 16 Pet. 435; *Collector v. Day,* 11 Wall. 113; *Pollock v. Farmers' L. & T. Co.* 157 U. S. 429, 584, 15 Sup. Ct. 673; *Whitney v. Gunderson,* 31 Wis. 359; *Wis. Cent. R. Co. v. Taylor Co.* 52 Wis. 37, 51, 8 N. W. 833; *U. S. v. Thurston Co.* 143 Fed. 287; *Jones v. Estate of Keep,* 19 Wis. 369, 374; *State v. Railway Cos.* 128 Wis. 449, 519, 108 N. W. 594.

If the salary clause of the constitution were the only one which affected the situation, an interesting question would be

presented upon which no great amount of authority can be found. What little there is seems to support the relator's contention. The constitution provided originally that taxes should be levied on property, and the matter of taxing incomes was something that was practiced little, if at all, in America when the constitution was adopted. That the framers of our constitution intended to exempt public officers from any part of the burden of taxation which might be imposed generally on the body of the taxpayers of the state for the support of the government and the benefit of the public, including the office holders, may well be doubted. It is not necessary to decide the point in this case.

Sec. 1 of art. VIII of our constitution originally provided: "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." To this was added by way of amendment, the following proviso in 1908: "Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

The attorney general argues that the uniformity clause of the original section extends to the amendment, and that if the act of the legislature attempted to exempt salaries it would be unconstitutional. The relator argues that the uniformity clause has no application to the assessment of incomes. The question is not important here, because we construe the amendment as authorizing the legislature to tax incomes in any case where the power rests in the state to impose such a tax. It would not be contended that the constitution might not be amended so as to abrogate sec. 26 of art. IV entirely. Neither would it be contended, if the amendment of 1908 had in express terms stated that salaries of public officers should be subject to an income tax, that so much of sec. 26 of art. IV as prohibited the levy of such a tax would not be abrogated, assuming that it did prohibit the imposition of a tax on salaries of public officers. The real question is one of construc-

tion involving the comprehensiveness of the 1908 amendment. The language is broad and sweeping, making and containing no exception. Both constitutional provisions are somewhat general in their nature. As applied to the right to tax incomes of state officers, sec. 26 of art. IV is no more specific than is the amendment of 1908. Hardly as much so. The latter says taxes may be "imposed on incomes." We are not at liberty to rewrite this clause so as to read that taxes may be "imposed on incomes, except where the income consists of a salary received by a public officer." We perceive very little room for construction, and if a doubtful question were involved it should not be resolved against the exercise of the taxing power by the state.

It is argued that there was no intention on the part of the legislature to tax the salaries of public officers as part of their income, because sec. 1087m—2, Stats., provided that such income should not be taxed if such taxation would be repugnant to the constitution. It seems to us that it was clearly the intention to tax all salaries that could be constitutionally taxed. The section in question was held to be valid legislation in the *Income Tax Cases,* 148 Wis. 456, 515, 134 N. W. 673, 135 N. W. 164. The restriction was entirely proper. The legislature desired to reach the salaries of public officers if it could do so, but did not want to imperil the entire act if it could not do so. The words "all wages, salaries or fees derived from services" might well be held to cover the compensation received by federal office holders who are residents and citizens of the state. Yet, under the decisions of the United States supreme court, it would appear that such salaries are not subject to a state tax. *Dobbins v. Erie Co.* 16 Pet. 435; *Pollock v. Farmers' L. & T. Co.* 157 U. S. 429, 584, 15 Sup. Ct. 673. We do not see how the provision referred to affects the situation one way or the other in determining the constitutional question involved or the taxability of the income, if the legislature had the power to impose a tax on it.

2. The relator further urges that the income tax assessor had no power to appeal from the decision of the board of review to the tax commission. It is said that a person cannot take an appeal unless he is a party or privy to the proceeding and have a substantial interest in the controversy and be prejudiced by the decision appealed from, and that all of these prerequisites are lacking in the instant case. Many decisions are cited to support the contention made, which is no doubt correct enough as applied to court proceedings. This proceeding is statutory, however, and the statute is pretty comprehensive. Sec. 1087m—19 provides: "*Any person dissatisfied with any determination* of the county board of review may appeal within twenty days," etc. It may be fairly said that taxpayers generally are interested in seeing that no property escapes taxation. A full disclosure tends to equalize the burden of taxation, and, theoretically at least, to lessen it as to those who comply with the law. An income tax assessor is charged with very important duties in reference to the administration of the Income Tax Law. He assessed this income in the first instance. He was a person dissatisfied with the action of the board of review, and it seems clear that the statute conferred on him the right to appeal.

*By the Court.*—Judgment affirmed.