PERCY WARREN GREEN *v.* PIERRE S. DU PONT, State ·Tax Commissioner.

(*July* 1, 1935.)

LAYTON, C. J., RICHARDS and REINHARDT, J. J., sitting.

*Percy Warren Green* in *propria persona.*

*William H. Foulk* for the State Tax Commissioner.

Superior Court for New Castle County, No. 194, January Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The question to be decided is whether the appellant's official salaries for the year 1933 were subject to income tax, although the income tax statute was in operation prior to his appointment to the offices of Chief Deputy Attorney-General and Attorney-General.

The original statute, *Chapter* 26, *Vol.* 29, *Laws of Delaware,* exempted the salaries of public officers, then in office, during their terms of office; and the first amendatory statute, *Chapter* 30, *Vol.* 30, *Laws of Delaware,* exempted the compensation of public officers for the terms to which they had been elected or appointed prior to April 2, 1917, that being the date of the approval of the original act.

Since 1921, when the original and amendatory statutes were repealed and a new statute enacted, there has been no provision for the exemption of official salaries, and this fact is noticed by the appellee as evidence of the legislative purpose to subject all official salaries to the operation of the income tax law.

The entire history of the administration of the Tax Department, subsequent to the act of 1921, conclusively shows the belief of the administrators of the law that an income tax act cannot affect the salaries of public officers in office at the time of its enactment.

In 1922, the Attorney-General, deeming himself to be disqualified to render an opinion, requested one of the ablest members of the bar of this state to advise upon the question, whether the salaries of public officers, in office at the time of the enactment of the income tax act of 1921, were subject to taxation under that act, which contained no provision excepting such officers from its operation. The opinion rendered was that the salaries of such officers were not subject to taxation. *Evans v. Gore*, 253 *U. S.* 245, 40 *S. Ct.* 550, 553, 64 *L. Ed.* 887, 11 *A. L. R.* 519, was cited and largely relied upon. This opinion has been followed consistently by the Tax Commissioner in the administration of his office, and it is not contended here that the rule is, or ought to be, otherwise; but it is claimed that, as the appellant assumed office after the enactment of the taxing act, his official salaries were subject to its operation.

As the determination of the question is largely centered around the logic of *Evans v. Gore, supra,* decided in 1920, and of *Miles v. Graham*, 268 *U. S.* 501, 45 *S. Ct.* 601, 602, 69 *L. Ed.* 1067, decided in 1925, it is necessary to consider at length those authorities.

In *Evans v. Gore,* the question was whether the salary of a Federal District Judge, in office at the time of the enactment of the *Federal Income Tax Act of* 1919 (40 *Stat.* 1057), was subject to tax under that act, which specifically included within its provisions the salaries of the Federal Judiciary; and it was decided, Justices Holmes and Brandeis dissenting, that the salary was not taxable. The court stated the fundamental theory of the constitution, that liberty and justice would be the better secured by a separation of the three branches of government, each relatively independent of the other, and that certain restraints were necessary to

secure that independence; for otherwise, the legislative branch, inherently the strongest, might encroach upon or dominate the others, especially the judicial branch, the weakest of the three. Jurists and statesmen were quoted to establish conclusively that the provision in the *Federal Constitution* (*Article* 3, § 1) forbidding the diminution of the compensation of the judiciary during continuance in office was necessary to preserve the complete independence of the judiciary, and to secure a succession of competent men in judicial offices; and, following this reasoning the Court said:

"These considerations make it very plain, as we think, that the primary purpose of the prohibition against diminution was not to benefit the judges, but, like the clause in respect to tenure, to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations, and pervading principles of the Constitution and to the administration of justice without respect to persons and with equal concern for the poor and the rich. Such being its purpose, it is to be construed, not as a private grant, but as a limitation imposed in the public interest. * * *"

The Court then proceeded to point out that diminution may be effected in more ways than one, that is directly and indirectly, and said:

"But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition. Nothing short of this will give full effect to its spirit and principle. Here the plaintiff was paid the full compensation, but was subjected to an involuntary obligation to pay back a part, and the obligation was promptly enforced. Of what avail to him was the part which was paid with one hand and then taken back with the other? Was he not placed in practically the same situation as if it had been withheld in the first instance?"

The Court said that the reasons publicly assigned at the time and commonly accepted ever since "make with impelling force for the conclusion that the fathers of the

Constitution intended to prohibit diminution by taxation as well as otherwise—that they regarded the independence of the judges as of far greater importance than any revenue that could come from taxing their salaries," and concluded, "Here the Constitution expressly forbids diminution of the judge's compensation, meaning, as we have shown, diminution by taxation as well as otherwise. The taxing act directs that the compensation—the full sum, with no deduction for expenses—be included in computing the net income, on which the tax is laid. If the compensation be the only income, the tax falls on it alone; and, if there be other income, the inclusion of the compensation augments the tax accordingly. In either event the compensation suffers a diminution to the extent that it is taxed."

Thus much has been said of this case to make clear the reason for the provision of the Federal Constitution prohibiting the diminution of judicial salaries during the continuance in office of the persons against whom the diminution is directed, either directly or indirectly, by levying an income tax thereon.

For other discussion of the question reference is made to *Com. ex rel. Hepburn v. Mann,* 5 *Watts & S.* (*Pa.*) 403; *New Orleans v. Lea,* 14 *La. Ann.* 197; *Opinion of Attorney-General,* 48 *N. C.,* 3 *Jones Law, Appendix* 1; *In re Taxation of Salaries of Judges,* 131 *N. C.* 692, 42 *S. E.* 970; *Purnell v. Page,* 133 *N. C.* 125, 45 *S. E.* 534; *Booth v. United States,* 291 *U. S.* 339, 54 *S. Ct.* 379, 78 *L. Ed.* 836; *O'Donoghue v. United States,* 289 *U. S.* 516, 53 *S. Ct.* 740, 77 *L. Ed.* 1356; *Letter of Taney, C. J.,* 157 *U. S.* 701, *appendix; Opinion of Attorney-General Hoar,* 13 *Op. Attys. Gen.* 161; *Gillespie v. Board of Auditors,* 267 *Mich.* 483, 255 *N. W.* 388; *Crawford v. Hunt,* 41 *Ariz.* 229, 17 *P.*(2d) 802; *Auditor v. Adams,* 13 *B. Mon.* (52 *Ky.*) 150; *Holder v. Sykes,* 77 *Miss.*

64, 24 *So.* 261; *Burch v. Baxter,* 12 *Heisk.* (59 *Tenn.*) 601; *Bailey v. Waters,* 308 *Pa.* 309, 162 *A.* 819; *Abramson v. Hard,* 229 *Ala.* 2, 155 *So.* 590; *Smith v. Thompson* (*Iowa*), 258 *N. W.* 190; *Grimball v. Beattie,* 174 *S. C.* 422, 177 *S. E.* 668; *Riley v. Carter,* 165 *Okl.* 262, 25 *P.*(2*d*) 666, 88 *A. L. R.* 1018.

In 1925, *Miles v. Graham, supra,* was decided. There the attempt was to hold subject to income taxation the salary of a judge of the Court of Claims who had assumed office on September 1, 1919, after the enactment of the income tax law; precisely the same situation which is presented by this appeal.

The Government insisted that, although the provision of the taxing act of 1919 had been adjudged invalid as to all judges who took office prior to the date of its enactment, it was obligatory upon those thereafter appointed; but the Court held to the contrary. The Court cited and quoted from *Evans v. Gore,* and concluded:

"Does the circumstance that defendant in error's appointment came after the taxing act require a different view concerning his right to exemption? The answer depends upon the import of the word 'compensation' in the constitutional provision.

"The words and history of the clause indicate that the purpose was to impose upon Congress the duty definitely to declare what sum shall be received by each judge out of the public funds and the times for payment. When this duty has been complied with, the amount specified becomes the compensation which is protected against diminution during his continuance in office.

"On September 1, 1919, the applicable statute declared:

" 'The Chief Justice (of the Court of Claims) shall be entitled to receive an annual salary of $8,000, and each of the other judges an annual salary of $7,500, payable monthly.' *Comp. St. Ann. Supp.* 1919, § 1127 [28 *USCA* § 241].

"The compensation fixed by law when defendant in error assumed

his official duties was $7,500 per annum, and to exact a tax in respect of this would diminish it within the plain rule of *Evans v. Gore.*

"The taxing act became a law prior to the statute prescribing salaries for judges of the Court of Claims, but if the dates were reversed it would be impossible to construe the former as an amendment which reduced salaries by the amount of the tax imposed. No judge is required to pay a definite percentage of his salary, but all are commanded to return, as a part of 'gross income,' 'the compensation received as such' from the United States. From the 'gross income' various deductions and credits are allowed, as for interest paid, contributions or gifts made, personal exemptions varying with family relations, etc., and upon the net result assessment is made. The plain purpose was to require all judges to return their compensation as an item of 'gross income,' and to tax this as other salaries. This is forbidden by the Constitution.

"The power of Congress definitely to fix the compensation to be received at stated intervals by judges thereafter appointed is clear. It is equally clear, we think, that there is no power to tax a judge of a court of the United States, on account of the salary prescribed for him by law."

In *Long v. Watts,* 183 *N. C.* 99, 110 *S. E.* 765, 771, 22 *A. L. R.* 277, decided in 1922, the attempt was to collect from the complainant an income tax upon his salary as judge of the Superior Court notwithstanding the constitutional provision prohibiting diminution of salaries of judges during their continuance in office. The term of office began on January 1, 1919. The taxing law was enacted in 1921. The lower court permanently enjoined the Commissioner of Revenue from collecting the tax. On appeal, the lower court was sustained, and it was said:

"Is his official salary to be included in his taxable income? No. The Constitution clearly and plainly provides otherwise."

"Let it be understood henceforth that this is the law as it is now written; and it can make no difference whether the tax be levied before or after the taking of office. The spirit as well as the letter of the Constitution must be observed. * * * What the state pays or allows for his services as a judicial officer is not a proper item to be included in his taxable income."

The Chief Justice, in concurring opinion, said:

"What the Constitution provides, and which no statute can

repeal, is that 'the compensation' which the law shall allot from time to time, for the support of the judges, 'shall not be subject to diminution.' It can make no difference in what way the reduction in the allowance to the judges shall be made, or whether it is before or after the salary is fixed. When the Legislature has fixed the amount which they deem necessary as a salary for the support of the judges they cannot diminish that amount in any mode."

This is precisely the thought expressed in the later case of *Miles v. Graham.*

The appellant contends that *Miles v. Graham* is distinguishable from the case under consideration. If it is, it, of course, has no authority here; if it is not, that respect should be accorded it which is due to a pronouncement of the highest court in the land.

The Tax Board, in its opinion, attempted to distinguish the case in two particulars; first, in that the provision of the Federal Constitution, there under consideration, was concerned with the compensation of judges only, whereas the prohibitory provision of the Delaware Constitution applies to all public officers; second, that the phraseology of the Delaware Constitution, "after his election or appointment," is essentially different in meaning from that of the Federal Constitution, "during their Continuance in Office."

After stating the question presented here, whether the prohibition of the constitution is intended to announce a rule that the state cannot by an income tax law, enacted prior to the incumbency of any public officer, collect a portion of the income by way of tax, it was of the opinion that the provision of our constitution was not intended to place upon the legislature any such far reaching restriction. It was pointed out that the prohibition against diminishing the salary of public officers, is coupled with the provision prohibiting extending the terms of public officers, and it was said that the phrase, "after his election or appointment," would seem conclusive of a legislative intention to

forbid only such acts as are enacted after the election or appointment of the officer, and the opinion proceeds to say:

"If, applied to laws extending the terms of public officers, it means only such laws as are enacted, after the election or appointment of the officers, it must mean the same thing applied to laws diminishing the salary or emoluments of the officer." And continues:

"Moreover, we doubt whether the reasoning of the Supreme Court of the United States applied to the provisions of the Federal Constitution respecting the judiciary is applicable to a constitutional provision which deals with all officers. In any event, we are satisfied that the *Miles Case* is distinguishable and is not authority in point upon the construction of *Section 4, Article 15* of the *Delaware Constitution.*"

The Tax Board was content with these categorical statements. Their soundness is to be examined.

The framers of the Federal Constitution thought it proper not only to protect the Chief Executive officer of the nation against diminution of compensation, but also, possibly induced by the fear of his great influence, to prohibit an increase of his compensation during the period "for which he shall have been elected," and to prohibit diminution of salaries of judges during their continuance in office. The same provision appears in the Constitution of this State, in respect of the Governor, in almost identical language. *Const. Art.* 3, § 7. But with us, in 1897, when the present Constitution was adopted, with the years of experience to advise and to guide, it was thought necessary to throw around all public officers the same protection against diminution of official compensation, and without doubt, for the same reasons which led to the inclusion of the provision in the Federal Constitution, that is, to secure competent persons to occupy official stations, and for the protection of their independence of action and judgment in the discharge of their duties, whether executive, or judicial; not as a favor, benefit or privilege to them, but to secure an honest, impartial and fearless administration of govern-

ment, "a limitation imposed in the public interest." *Evans v. Gore, supra.*

No stronger case can be made out for the judiciary than for other public officers under the prohibitory provision. There is no reason advanced, nor can one be offered, to show that the framers of the Constitution favored the judiciary over other public officers in this respect. It was thought necessary to protect all public officers, and all are protected. The adjudicated cases do not hint at a distinction betwen the judiciary and other public officers with respect to provisions similar to our own. See *Crawford v. Hunt, supra.* Nor, has the Tax Department, in its application of the law, attempted heretofore to construe the provision as favoring judges over other public officers. In its opinion herein, the Tax Board says that it "assumes that an income tax cannot constitutionally impose taxes on the compensation or salaries of public officers in office at the time of its passage."

If this assumption be correct, certainly the fact that the taxing act antedates the assumption of office gives no warrant to suppose that, under the same constitutional provision, judges, in such circumstances, form a favored or privileged class of public officers.

The phrase, "after his election or appointment," includes everything within the meaning of the phrase "during their Continuance in Office," and possibly something more. The first protects the situation arising where, after election or appointment and before taking office, the salary or emoluments are diminished. Conceivably, the second phrase does not go that far. Apart from this, the respective phraseologies express precisely the same meaning and purpose, that is, to prohibit the diminution of the fixed compensation of a public officer from the moment of his

assuming office until his right thereto ceases, whether by expiration of term, resignation or otherwise.

It is true that the provision of the Delaware Constitution contains two prohibitions. For convenience, they were placed in one sentence, but they are separable, and the one exists, with all its force and meaning, quite independent of the other. There is no significance to be attached to the coupling of these prohibitions; for it is not denied that the term of office of a public officer cannot be extended after his election or appointment, nor is it contended that the Legislature may not diminish the salary of a public officer prior to his election or appointment. This is true as well under the Federal Constitution as under our own. In *Miles v. Graham,* it was said:

"The power of Congress definitely to fix the compensation to be received at stated intervals by judges thereafter appointed is clear."

The attempt of the Tax Board to distinguish the situation in *Miles v. Graham* from the instant case is futile.

But, counsel for the Tax Commissioner, in his brief of argument, in discussing *Miles v. Graham,* opines that the decision there is considerably weakened, insofar as it may be considered as applicable here, by its peculiar circumstances, which are said to be these: that the statute fixing the compensation followed the statute levying the tax in point of time; that the incidence of the tax did not fall equally upon all the judges then serving, but only upon those appointed subsequent to the taxing act; and that the section of the law under which the tax was attempted to be levied had been declared unconstitutional in *Evans v. Gore, supra.* However, in *Miles v. Graham,* as here, the statute fixing the compensation followed the statute levying the tax in point of time; and as there said:

"If the dates were reversed it would be impossible to construe the

former as an amendment which reduced salaries by the amount of the tax imposed."

The other reasons for the supposition that the authority of *Miles v. Graham* is weakened in repect of the instant case appear in the opinion of the lower court. They are ignored by the Supreme Court, and form no basis for that opinion.

On behalf of the respondent are cited *Taylor v. Gehner*, 329 *Mo.* 511, 45 *S. W.* (2d) 59, 60, 82 *A. L. R.* 986, and *State ex rel. Wickham v. Nygaard,* 159 *Wis.* 396, 150 *N. W.* 513, 516, *Ann. Cas.* 1917A, 1065. In the first of these cases, one of the reasons advanced by Mr. Justice Holmes, in his dissenting opinion in *Evans v. Gore,* was relied upon, that the independence of judges may not be considered to be attacked by a law which requires a judge "to pay the taxes that all other men have to pay." This view has never been followed by the Tax Department in its administration of the law; it is not contended for here, and we definitely decline to adopt it.

The second case was decided upon the provisions of the Wisconsin Constitution, prior to the decision in *Evans v. Gore.* Originally, that constitution provided that the salary of a public officer shall not be diminished or increased during his term of office. Subsequently the constitution was amended, and a provision inserted for taxes on incomes, privileges and occupations. Under the amendment a statute was enacted levying a tax on the salaries of all public officers except where the taxation thereof would be unconstitutional. It was held that as the amendment was as broad, sweeping and specific as the provision against diminution, the salary of a circuit judge was subject to income tax; and it was, in these circumstances, that the court said:

"We are not at liberty to rewrite this clause so as to read that

taxes may be 'imposed on incomes, except where the income consists of a salary received by a public officer.'"

This reasoning is the second argument advanced by Mr. Justice Holmes, in *Evans v. Gore,* that the passage of the Sixteenth Amendment to the Federal Constitution giving the Congress power to "collect taxes on incomes, from whatever source derived," rendered valid the tax, notwithstanding the provision prohibiting diminution of judicial compensations; an argument which was specifically and definitely disallowed in the prevailing opinion.

Finally we are referred to certain language in *State v. Pinder,* 7 *Boyce* (30 *Del.*) 416, 108 *A.* 43, 46. There the Court in Banc had under consideration the constitutionality of the income tax act of 1917. It was urged that the act was unconstitutional because of lack of uniformity, under *Section 1, Article 8 of the Constitution,* providing that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. The lack of uniformity was said to lie in the exemption of certain classes of persons, including the salaries of public officers. The court held the reason for the exemption of salaries of public officers was the belief that the taxing of such income would make the act unconstitutional, and, not deciding the point, observed that, "it is sufficient to say that the belief which influenced the Legislature was a reasonable one," in view of the constitutional provisions prohibiting the diminution of salaries of public officers after election or appointment. The court then proceeded to say:

"It will be observed that the act does not exempt salaries received after the terms of office which began before the enactment of the law."

This language is relied upon in the brief of counsel for the appellee as "indicative of a feeling on the part of the Court that the salaries of public officers appointed after

the enactment of the law would be subject to the provisions thereof."

This case was decided before that of *Miles v. Graham.* The statement of the court was, of course, a dictum, and it is sufficient to repeat, as said by Chief Justice Marshall, in *Cohens v. Virginia,* 6 *Wheat.* 264, 399, 5 *L. Ed.* 257:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

*McDaniel v. Levy Court,* 5 *Penn.* (21 *Del.*) 240, 59 *A.* 865, is not in point. There the Sheriff of New Castle County claimed that his emoluments, that is, the profit arising from boarding of prisoners committed to his charge, had been taken away by the act creating the New Castle County Workhouse, and placing prisoners in charge of the Trustees of that institution. The act establishing the workhouse was approved March 16, 1899 (21 *Del. Laws, c.* 247). It provided that the building should be completed within two years and when completed, and upon certain notice to the Sheriff, he should deliver all prisoners in his custody to the Trustees of the Workhouse. The buildings were not completed until November, 1901, after the election of the Sheriff in 1900. The Court said that the passage of the act in March, 1899, was notice to any person who might be a candidate for the office of Sheriff in the year 1900 that the prisoners would be taken from his custody during his term of office, and further, that the law imposed no duty upon the Sheriff to board prisoners; that whatever power and right be possessed in this regard was not a constitutional, common law and immemorial power or right at-

tached to his office; and, therefore, the law could not be conceived of as diminishing the emoluments of the office of the Sheriff after his election thereto.

We concur in the regret expressed in *Evans v. Gore*, a sentiment repeated in *Long v. Watts*, that the decision of this question has been cast upon us, because of the personal relation of the members of this court to the question, although each member of the court has been paying the tax in respect of his salary in regular course. But, the appellant has the clear legal right to demand our decision upon the applicability of the taxing statute to his own salaries. In this we can neither advise nor control; nor can we renounce jurisdiction. When a citizen alleges that his rights have been violated, or a public officer insists that he be informed of the law, and the matter is brought properly before the court, it becomes the duty of the court to decide the cause upon its merits, no matter how distasteful it may be.

The question is not the right of the legislature definitely to fix the compensations to be received by public officers thereafter appointed, but what were the salaries established by law when the appellant assumed his offices. It is those salaries, then definitely fixed, which come within the protection of the constitutional provision.

Prior to January and July, 1933, when the appellant entered upon the discharge of his duties as Chief Deputy Attorney-General and as Attorney-General, the Legislature, fulfilling its implied constitutional duty, had decreed that he receive $3,000.00 and $6,000.00 annually for his respective services; and he was entitled to receive those amounts, or the proportional parts thereof, without abatement or deduction. It matters not in what way the deduction of compensation may have been attempted, or whether before or after the establishment of the compensations; for, if the

assumption of office antedates the taxing act, the salary is immune, and if the salary is established after the taxing act, it is that salary which is protected. The taxing act may not be construed as an amendment to the act fixing the compensation.

The decision of the State Tax Board is reversed, and the State Tax Commissioner is directed to refund to the appellant the amount of the tax wrongfully computed and exacted upon his official salaries for the year 1933.

NOTE. This case is pending in the Supreme Court on writ of error.