[Sunbury, July 3, 1829.]

## The Commissioners of Northumberland County *against* CHAP-MAN.

### IN ERROR.

The office of President Judge of a judicial district, is liable to taxation for county rates and levies under the act of the 11th of *April,* 1799.

An amicable action on the case was entered in the Court of Common Pleas of *Northumberland* county, in which the following case was stated:—

"It is hereby submitted to the associate judges, now holding a Court of Common Pleas, to decide whether the defendant is liable to be taxed for his office of President Judge of the Eighth Judicial District of *Pennsylvania,* by the laws for raising county rates and levies; and if so, judgment to be entered for the plaintiffs for three dollars, the amount assessed for the year 1825. If not, then judgment to be entered for the defendant. Either party to have the right of removal by writ of error."

The associate judges gave judgment as follows:—

"*May* 2d, 1828.—We the associate judges of the Court of Common Pleas of *Northumberland* county, upon the above statement are of opinion, that no state officer is liable to be taxed for his office by the county commissioners: and a President Judge, whose salary cannot by the constitution be diminished during his continuance in office, cannot be taxed. If the legislature had the power to pass an act of that kind, the constitution would be a nullity. We therefore give judgment for the defendant."

On this judgment a writ of error was taken out.

*Donnell* was counsel for the plaintiffs in error. The cause was submitted to this court on written arguments on each side.

(The Commissioners of Northumberland County *v.* Chapman.)

*Arguments for the plaintiffs in error.*—The 4th section of the act of the 11th of *April,* 1799, (*Purd. Dig.* 136,) respecting county rates and levies, is very explicit in its enumeration of the objects and subjects of taxation; and, among the rest, it expressly includes "all offices and posts of profit." Offices and posts of profit, are, unquestionably, subjects of taxation.

That the situation which the defendant occupies, as president judge of the eighth judicial district of *Pennsylvania,* is an *office,* is clearly manifested by the very section of the constitution under which he claims his exemption from taxation. The second section of the fifth article of the constitution, provides, that the judges of the "several Courts of Common Pleas shall hold their *offices* during good behaviour;" that the compensation for their services "shall not be diminished during their continuance in *office,*" nor shall they hold "any *other office* of profit" during their continuance therein.

But it is said that the constitution expressly prohibits any diminution of the compensation of a judge, during his continuance in office; and that the imposition of a tax upon this office, diminishes the compensation, and is, therefore, illegal and not payable. Such a construction of the constitution would give more force to that section of the instrument, than would seem, from its letter and spirit, to be warrantable. The tax does not diminish the compensation. The demand of the judge upon the commonwealth for his services is not, in the least degree, abated. The "adequate compensation which has been fixed by law," remains untouched by the tax; and the undiminished amount thereof is, at stated periods, payable to his orders. The protection afforded by the second section of the fifth article of the constitution was intended to shield the incumbent from legislative interference, and to prevent the commonwealth from reducing the consideration upon which the officer accepted the service. The compensation was *fixed* at the time of his appointment, and no act of the legislature, under the present constitution, can withdraw any part of it from him. The burdens of the public must be sustained by the public generally; and the defendant is liable to contribute to the ordinary expenditures of government as any other citizen, unless he is exonerated by law. The law of the 11th of *April,* 1799, exempts the profession of a minister of the gospel and the occupation of a schoolmaster from taxation, but every other description of office, post of profit, trade and occupation is expressly made the subject of taxation.

*Arguments for the defendant in error.*—The act of assembly of the 11th of *April,* 1799, for raising county rates and levies, empowers the commissioners of the county to assess a tax on all offices and posts of profit. This is expressed in general terms, but admits of many exceptions. The same act requires an assessment of taxes upon all lands held by patent warrant, location, or improvement, yet that admits of exceptions; namely, of lands grant-

(The Commissioners of Northumberland County *v.* Chapman.)

ed to soldiers, which are exempt from taxation.  By the terms of the act of assembly, unimproved land, not occupied, but held by the state, cannot be taxed: neither can improved land, purchased by the state from individuals holding by patent, be taxed.  The commissioners of the county of *Dauphin* have no right to tax the state for the state house and other public buildings for the use of the state; nor for the land upon which they are erected; the authority of the state being paramount to the authority of the county; nor can the property of a county be taxed for city or borough purposes; the rights of the county being superior to a corporation within the county. 4 *Serg. & Rawle,* 354.  In the different counties in the state, there are many *United States'* officers—members of congress, judges, marshalls, and postmasters: have the county commissioners, for the counties in which they reside, a right, under the aforesaid act, to tax them for their respective offices; and, in that way, by the authority of a state law reduce the compensation, which, by act of congress, is allowed them?  It would seem not; this would be interfering with the national government, and violating the act of congress which is paramount to the act of assembly, by reducing the compensation allowed by act of congress to their public servants.  Can any state officer be taxed whose compensation for his services is derived solely from the state by act of assembly?  Can the commissioners of *Dauphin* county lay a tax upon the governor and other state officers residing there, for their respective offices?  What has the county of *Dauphin* to do with the heads of department, more than every other county in the state?  It derives a benefit by their spending their salaries there, but they receive no compensation from the citizens of *Dauphin* county more than in common with the other citizens of the state.  If the county of *Dauphin* had this right, every other county of the state would have the same right, for their jurisdiction extends over the state, and it is not the domicile which gives the right of taxation, as to real or personal property; for a man is taxable for his real or personal property in every county of the state which comes within the description of the act of the 11th of *April,* 1799.  Militia officers, who reside in every county, never have been taxed for their offices, and yet many of them receive a compensation fixed by law; and even a county commissioner, whose daily compensation is fixed by law, has never yet been known to be taxed.  The compensation allowed our canal commissioners, engineers, &c. has not yet been taxed in the counties in which they live, for their offices.  Such a construction of the act would cause one act of assembly to interfere with another.  The legislature allow such officers a certain and specific compensation; but the commissioners of the county will reduce that compensation by assessing upon it a tax of ten dollars per annum, which will authorize the supervisors and overseers of the poor to do the same.  No state officer, whose specific compensation for his services to the state is fixed by

law, can be taxed under the act, without introducing the absurdity of making this act of the 11th of *April*, 1799, paramount to all other acts of assembly, which would not be a legal construction of the act: such a construction can be given without any interference between the different acts of assembly. The office of president judge is, however, doubly guarded from taxation by the constitution, and by law; it is a state office, the jurisdiction extending in many instances over the whole state. The president judges have authority to issue attachments, *testatum* executions, *capiases* in criminal cases, to any part of the state; their compensation is specific and fixed by law for their services to the state, with which no county commissioners in the state can legally interfere. By act of the 13th of *April*, 1791, the compensation allowed a president judge is five hundred pounds per annum; by act of the 4th of *April*, 1792, the salaries of the president judges are raised to sixteen hundred dollars; and by act of the 14th of *March*, 1814, mileage of fifteen cents per mile is allowed in addition to their former salaries. By the constitution of *Pennsylvania*, article fifth, section second, the presidents of the several Courts of Common Pleas, shall, at stated times, receive for their services an adequate compensation, to be fixed by law, which shall not be diminished during their continuance in office; but they shall receive no fees or perquisites of office, nor hold any other office of profit under this commonwealth. By section seventh, article eighth, all officers, executive and judicial, shall be bound by oath or affirmation to support the constitution of this commonwealth. The constitution of *Pennsylvania* is the supreme law of *Pennsylvania*, to which all inferior laws must submit. It is a solemn article of agreement, or league and covenant, between the people and their public servants, commanding their representatives how far they may go; and so jealous were the good citizens of this commonwealth upon the adoption of the constitution, of their rights and liberties, that they would not trust the irrepresentatives to rule over them, until they, before entering upon the duties of their offices, took a solemn oath, or affirmation, that they would support the constitution of this commonwealth. If the legislature, in their act of the 11th of *April*, 1799, had expressly included president judges, it would have been a direct and positive violation of the constitution, which could not have been sanctioned by any equivocation or sophistry. If they had a right to tax the salary of a president judge ten dollars, they had an equal right to tax him one thousand dollars; but it has not been the practice of our courts to make constructive violations of the constitution, where the act of assembly did not require such a construction. It would be absurd to say that the act of the 11th of *March*, 1799, was an unconstitutional law, unless it expressly included offices which are not taxable by the constitution. The charitable and legal construction is, that those offices are not included under the general terms of the law. It may be asked, what offices are included

(The Commissioners of Northumberland County *v.* Chapman.)

within the general terms of this act?. This is not a difficult question to answer; it includes such offices as are held within the county, the incumbents of which derive their compensation by fees from the citizens of the county, and are profitable according to the business they perform, such as registers and recorders, prothonotaries, attorneys at law, &c. &c. .

The opinion of the court was delivered by

GIBSON, C. J.—The ground assumed in the ingenious argument of the defendant, is that a construction which would bring the office of a president judge within the purview of the act of the 11th of *April,* 1799, would, at the same time, bring that act into collision with a prohibition of the constitution, which declares that the compensation of the judges of the Supreme Court, and of the presidents of the Courts of Common Pleas, "shall not be diminished during their continuance in office." Taxes are assessed for county purposes under the authority of the legislature, which is undoubtedly incompetent to reduce the defendant's salary. But as the constitution, like every other instrument, is to have a reasonable interpretation, the prohibition in question is to be restrained to laws which have such a reduction for their object and not for their consequence. On any other principle of construction a tax could not be constitutionally assessed on property purchased with money drawn from a judge's salary, which would, in reason, have as fair a claim to exemption as the salary itself. If we once get away from the plain inartificial import of the prohibition, it is not easy to foretell at what stage of refinement we shall stop. The object of the legislature was to apportion the public burden according to the ratio of property, and to produce in detail a result approaching as near as possible to that of an income tax—a measure of assessment more equable in the abstract than any other that could be proposed. Now, there is no reason to exempt a judge from contribution, which is not just as applicable to any other officer who presents no tangible surface but his office, to the revenue laws; nor was the object of the prohibition to place him in this respect on higher ground. The legislature could not constitutionally retrench a part of a judge's salary under the pretext of assessing a tax on it; but, for the *bona fide* purpose of contribution, a reasonable portion of it, like any other part of his property, may be applied to the public exigencies. An additional objection is, that as the functions of the office are to be performed in several counties, each would have an equal claim to tax its emoluments. But the salary, which is in fact the thing taxed, is enjoyed in the county where the judge resides. That lands are taxable in the county where they are situate, is one of the accidents of territorial jurisdiction: but the right to tax an office which attends the person like a chattel, is necessarily regulated by the domicile. It may not be so easy to determine whether the power of the assessor extends to all offices, public or private, state or federal, perma-

(The Commissioners of Northumberland County *v.* Chapman.)

nent or temporary, legislative or executive, ministerial or judicial. For instance, whether a brigade inspector of militia, or a member of the general assembly be rateable under the existing laws in respect of the office, is a question about which sensible men might differ. There can, however, be no question as to the office of a judge, which, producing a fixed income, is incontestably within, not only the letter, but the reason of the law. We are of opinion, therefore, that according to a sound construction of the act of assembly, the defendant's office was properly assessed.

Judgment of the court below reversed, and judgment rendered for the plaintiffs.