## WILLIAM E. PECK & COMPANY, INCORPORATED, *v.* LOWE, COLLECTOR OF INTERNAL REVENUE, SECOND DISTRICT OF NEW YORK.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 234.  Argued December 10, 11, 1917.—Decided May 20, 1918.

The Sixteenth Amendment does not extend the power of taxation to new or excepted subjects, but merely removes occasion for apportioning taxes on income among the States.

Net income of a corporation derived from exporting goods from the States and selling them abroad is subject to be taxed under § II of the Income Tax Law of October 3, 1913, c. 16, 38 Stat. 166, 172,

as part of the "entire net income arising or accruing from all sources."

Such a tax, general and in no way discriminating against exports and affecting the export business at most only indirectly, is not contrary to the constitutional provision that "no tax or duty shall be laid on articles exported from any State." Art. I, § 9, cl. 5.

234 Fed. Rep. 125, affirmed.

THE case is stated in the opinion.

*Mr. Charles P. Spooner* and *Mr. Richard V. Lindabury*, with whom *Mr. John C. Spooner* and *Mr. Ralph T. Keyser* were on the briefs, for plaintiff in error:

A tax upon income derived from exports, by whatever name it is called, is a tax upon exports, and is therefore unconstitutional. Congress may no more burden exports and exportation by indirection than by a tax directly upon the article exported; the substance and effect and not the form of a tax controls. The principle here involved has found repeated examples in cases of state taxes, in various forms, burdening interstate and foreign commerce. *Brown* v. *Maryland,* 12 Wheat. 419, 445; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Welton* v. *Missouri,* 91 U. S. 275; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 336; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 645. In *Fairbank* v. *United States,* 181 U. S. 283, 295, the court, citing *Brown* v. *Maryland,* held that "the freedom of exportation being guaranteed by the Constitution it cannot be disturbed by any form of legislation which burdens that exportation. The form in which the burden is imposed cannot vary the substance." To the same effect: *United States* v. *New York & Cuba Mail S. S. Co.,* 200 U. S. 488; *United States* v. *Hvoslef,* 237 U. S. 1; *Thames & Mersey Ins. Co.* v. *United States,* 237 U. S. 18; *State* v. *Allgeyer;* 110 Louisiana, 839. See further (as to state taxes): *Welton* v. *Missouri, supra,* 278; *Low* v. *Austin,* 13 Wall. 29, 34; *Cook* v. *Pennsylvania, supra,* 570; *Webber* v. *Virginia,* 103 U. S. 344, 350.

It is well settled by the decisions that a tax on income is a tax on the source from which the income is derived, and that if the source be not subject to tax the income cannot be. This principle is clearly stated in the final decision of the *Pollock Case,* 158 U. S. 630.

On the first hearing of that case the Attorney General sought to justify the assessment of the tax on the income from state and municipal securities ''as part of the total income of the respective owners under a law assessing incomes generally' and not discriminating between those securities and others of like character.'' But this court, in its first as well as in its final decision, unanimously overthrew this contention. In the decision upon the first hearing (157 U. S. 429), the majority and the dissenting opinions agreed on this point. In the same opinion the court held that an annual tax upon the income from real estate is the same in substance as an annual tax on the real estate; also that a tax on income from personal property is a tax on that property. 158 U. S. 618.

The *Pollock Case* shows clearly that there is no possible distinction between taxing an income and taxing the source from which it is derived. In the case at bar, the plaintiff is in just the same position, as to federal income taxation, as a state official receiving a salary from his State or a recipient of income from state or municipal bonds. See *Collector* v. *Day,* 11 Wall. 113; *Dobbins* v. *Erie County Commrs.,* 16 Pet. 435.

Upon the foregoing principles and decisions, this tax is unconstitutional. The income consists almost wholly of commissions or profits on sales of goods exported. The income from a group of such sales is a collection of the incomes from single sales. In considering either single export sales or transactions, or groups of them, and the profit or income therefrom, it is clear that no distinction can be established between the taxation of such sale or transaction and the taxation of the income or profit there-

from. The profit is the net yield or proceeds of the transaction, and the most essential and necessary factor in it, in fact, its very object and purpose, for the sake of which the transaction is made and except for which in sufficient amount the transaction would not be made.

No distinction has been drawn, in the courts or in commercial life, between the taxation of a transaction and the taxation of the proceeds of it. There is no difference in substance and effect between a tax on the goods in course of exportation, or on the bill of lading, or on the bill of exchange (*Fairbank* v. *United States, supra*), or on the commission or profit of the sale. All are alike burdens on the export transaction, and this is the essential matter. Differences in rate or method of application are of no significance.

If it were held that a tax on income from exports is not a tax on exports, the result would be to open the way to serious injury or destruction of export trade by taxation, which would in effect overthrow the constitutional prohibition against taxing exports. For if it be not taxing exports to tax the income at the rate of one per cent., any higher rate would be equally permissible. Congress has power to and does discriminate in the income tax between different kinds of occupations and conditions, exempting some and varying the taxes imposed on others. The requirement of uniformity is held by the court to be sufficiently met when all the members of any designated class are treated alike throughout the United States. Likewise, Congress has power to and does discriminate between commodities. And so, if a tax on income from exports were not a tax on exports, Congress could at any time impose higher than the normal or ordinary rates on incomes of exporters, or certain classes of exporters, as in the *Fairbank Case*. Thus, by resorting to discriminatory and excessive taxes, Congress could suppress given classes of export business and lines of exportation to suit its views

of economic policy. And the principle thus accredited would logically lead to the taxation of the income of state securities by the United States and of United States securities by the States; the virtual state taxation of interstate and foreign commerce, and of the salaries of federal judges and other officers, to which Congress might reciprocate by like taxes on state officials. The results would be evil in the extreme.

It is not denied that income from exportation after it has been received and become commingled with the general property of the taxpayer is liable to the imposition of a general property tax, either federal or state, or both. So also is the income from state and federal bonds, the salary of state and federal officials and the receipts from interstate commerce.

It is one thing, however, to tax property which, although derived as income from a non-taxable source, has become an indistinguishable part of the taxpayer's general funds, and quite a different thing to tax a person on account of his receipt of an income from such source.

The difference between the two classes of taxes was pointed out by Mr. Justice Bradley in *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 341. It will be observed that in *Weston* v. *Charleston*, 2 Pet. 449; *Collector* v. *Day*, 11 Wall. 113; and the *Pollock Case*, *supra*, the tax was imposed under general income tax acts, two of which were similar in their provisions to the act under which the present tax was imposed, and in all of them the income had been received and had become as much a part of the general property of the taxpayer as the income taxed in the present case.

If the income from state and federal securities and from state and federal offices cannot be taxed, how can the income from exports be taxed? And, conversely, if the income from exports can be taxed, how can the income from state and federal securities and offices escape?

In answer to the argument that the constitutional prohibition against the taxation of exports was designed to give immunity only to property in the actual course of exportation, see *United States* v. *Hvoslef*, 237 U. S. 1, 13; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 338; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 648.

As to the cases of *Cornell* v. *Coyne*, 102 U. S. 418; *Brown* v. *Houston*, 114 U. S. 622; *Turpin* v. *Burgess*, 117 U. S. 504; and *State Tax on Railway Gross Receipts*, 15 Wall. 284, cited by the Government, it is enough to say: (1) That the last named was unanimously overruled in *Philadelphia & Southern S. S. Co.* v. *Pennsylvania, supra*. (2) That in the other three the tax was a general property tax and was levied upon manufactured goods before they became the subject of exportation. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, decides nothing more than that "when the sovereign authority has exercised the right to tax a legitimate subject of taxation, as an exercise of a franchise or privilege, it is no objection that a measure of taxation is found in the income produced in part from property which itself considered is nontaxable." But here, the franchise or privilege involved is clearly not a "legitimate subject of taxation," as the authorities already cited establish.

Neither can the tax be sustained as a tax on the person, measured by income. Such a tax would be by nature a capitation rather than an excise, and, in any event, would be a mere evasion for reaching exports indirectly. See *Brown* v. *Maryland, supra; Dobbins* v. *Erie County Commrs., supra; Cook* v. *Pennsylvania, supra; Leloup* v. *Port of Mobile, supra; State* v. *Allgeyer, supra.*

The various opinions in the *Pollock Case* show that the court divided only on the question as to whether the tax levied under the Income Tax Act of 1894 was direct or indirect in so far as it was imposed upon income from real and

personal property, and that the court was unanimous in holding that the tax was unconstitutional in so far as it rested upon income from municipal securities for the reason that Congress was without power to impose any tax whatever upon such securities and, therefore, the question as to whether the tax, as applied to them, was direct or indirect, was altogether negligible.

*Mr. Assistant Attorney General Fitts* for defendant in error:

A general tax laid upon all persons with respect to their income does not become a tax upon "articles exported" because the income is derived from an export business. Citing and discussing: *Brady* v. *Anderson,* 240 Fed. Rep. 665; *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Cooley* v. *Port Wardens,* 12 How. 299; *Cornell* v. *Coyne,* 192 U. S. 418; *Fairbank* v. *United States,* 181 U. S. 283; *Pace* v. *Burgess,* 92 U. S. 372; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Thames & Mersey Ins. Co.* v. *United States,* 237 U. S. 19; *Turpin* v. *Burgess,* 117 U. S. 504; *United States* v. *Hvoslef,* 237 U. S. 1.

The case is completely governed by the decisions of this court in the corporation tax and income tax cases. Citing and discussing: *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217; *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103; *Stratton's Independence* v. *Howbert,* 231 U. S. 399.

Mr. Justice Van Devanter delivered the opinion of the court.

This was an action to recover a tax paid under protest and alleged to have been imposed contrary to the con-

stitutional provision (Art. 1, § 9, cl. 5) that "No tax or duty shall be laid on articles exported from any State." The judgment below was for the defendant. 234 Fed. Rep. 125.

The plaintiff is a domestic corporation chiefly engaged in buying goods in the several States, shipping them to foreign countries and there selling them. In 1914 its net income from this business was $30,173.66, and from other sources $12,436.24. An income tax for that year, computed on the aggregate of these sums, was assessed against it and paid under compulsion. It is conceded that so much of the tax as was based on the income from other sources was valid, and the controversy is over so much of it as was attributable to the income from shipping goods to foreign countries and there selling them.

The tax was levied under the Act of October 3, 1913, c. 16, § II, 38 Stat. 166, 172, which provided for annually subjecting every domestic corporation to the payment of a tax of a specified per centum of its "entire net income arising or accruing from all sources during the preceding calendar year." Certain fraternal and other corporations, as also income from certain enumerated sources, were specifically excepted, but none of the exceptions included the plaintiff or any part of its income. So, tested merely by the terms of the act, the tax collected from the plaintiff was rightly computed on its total net income. But as the act obviously could not impose a tax forbidden by the Constitution, we proceed to consider whether the tax, or rather the part in question, was forbidden by the constitutional provision on which the plaintiff relies.

The Sixteenth Amendment, although referred to in argument, has no real bearing and may be put out of view. As pointed out in recent decisions, it does not extend the taxing power to new or excepted subjects, but merely removes all occasion, which otherwise might exist, for an apportionment among the States of taxes

laid on income, whether it be derived from one source or another. *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1, 17–19; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103, 112–113.

The Constitution broadly empowers Congress not only "to lay and collect taxes, duties, imposts and excises," but also "to regulate commerce with foreign nations." So, if the prohibitory clause invoked by the plaintiff be not in the way, Congress undoubtedly has power to lay and collect such a tax as is here in question. That clause says "No tax or duty shall be laid on articles exported from any State." Of course it qualifies and restricts the power to tax as broadly conferred. But to what extent? The decisions of this court answer that it excepts from the range of that power articles in course of exportation, *Turpin* v. *Burgess*, 117 U. S. 504, 507; the act or occupation of exporting, *Brown* v. *Maryland*, 12 Wheat. 419, 445; bills of lading for articles being exported, *Fairbank* v. *United States*, 181 U. S. 283; charter parties for the carriage of cargoes from state to foreign ports, *United States* v. *Hvoslef*, 237 U. S. 1; and policies of marine insurance on articles being exported,—such insurance being uniformly regarded as "an integral part of the exportation" and the policy as "one of the ordinary shipping documents," *Thames and Mersey Insurance Co.* v. *United States*, 237 U. S. 19. In short, the court has interpreted the clause as meaning that exportation must be free from taxation, and therefore as requiring "not simply an omission of a tax upon the articles exported, but also a freedom from any tax which *directly* burdens the exportation." *Fairbank* v. *United States, supra*, pp. 292–293. And the court has indicated that where the tax is not laid on the articles themselves while in course of exportation the true test of its validity is whether it "so directly and closely" bears on the "process of exporting" as to be in substance a tax on the exportation. *Thames and Mersey Insurance*

*Co.* v. *United States, supra,* p. 25. In this view it has been held that the clause does not condemn or invalidate charges or taxes, not laid on property while being exported, merely because they affect exportation indirectly or remotely. Thus a charge for stamps which each package of manufactured tobacco intended for export was required to bear before removal from the factory was upheld in *Pace* v. *Burgess,* 92 U. S. 372, and *Turpin* v. *Burgess,* 117 U. S. 504; and the application of a manufacturing tax on all filled cheese to cheese manufactured under contract for export, and actually exported, was upheld in *Cornell* v. *Coyne,* 192 U. S. 418. In that case it was said, p. 427: "The true construction of the constitutional provision is that no burden by way of tax or duty can be cast upon the exportation of articles, and does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated. The exemption attaches to the export and not to the article before its exportation."

While fully assenting and adhering to the interpretation which has been put on the clause in giving effect to its spirit as well as its letter, we are of opinion that to broaden that interpretation would be to depart from both the spirit and letter.

The tax in question is unlike any of those heretofore condemned. It is not laid on articles in course of exportation or on anything which inherently or by the usages of commerce is embraced in exportation or any of its processes. On the contrary, it is an income tax laid generally on net incomes. And while it cannot be applied to any income which Congress has no power to tax (see *Stanton* v. *Baltic Mining Co., supra,* p. 113), it is both nominally and actually a general tax. It is not laid on income from exportation because of its source, or in a discriminative way, but just as it is laid on other income. The words of the act are "net income arising or accruing

from all sources." There is no discrimination. At most, exportation is affected only indirectly and remotely. The tax is levied after exportation is completed, after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses. Thus what is taxed—the net income—is as far removed from exportation as are articles intended for export before the exportation begins. If articles manufactured and intended for export are subject to taxation under general laws up to the time they *i* re put in course of exportation, as we have seen they are, the conclusion is unavoidable that the net income from the venture when completed, that is to say, after the exportation and sale are fully consummated, is likewise subject to taxation under general laws. In that respect the status of the income is not different from that of the exported articles prior to the exportation.

For these reasons we hold that the objection urged against the tax is not well grounded.

*Judgment affirmed.*