EVANS, District Judge, v. GORE, Deputy and Acting Collector of Internal Revenue.

(District Court, W. D. Kentucky. December 23, 1919.)

No. 557.

INTERNAL REVENUE ⨺7—PROVISION FOR INCOME TAX ON SALARIES OF FEDERAL JUDGES NOT UNCONSTITUTIONAL.

The provision of Income Tax Act, § 213,[1] which, in requiring salaries generally to be included in gross income returns, specifies, among others, salaries of federal judges, *held* not in violation of Const. art. 3, § 1, which provides that the compensation of judges of the Supreme and inferior courts "shall not be diminished during their continuance in office."

At Law. Action by Walter Evans, United States District Judge for the Western District of Kentucky, against J. Roger Gore, Deputy and Acting Collector of Internal Revenue. On demurrer to petition. Demurrer sustained.

Walter Evans, of Louisville, Ky., pro se (Frank P. Straus, Howard B. Lee, Helm Bruce, William Marshall Bullitt, and Edmund F. Trabue, all of Louisville, Ky., of counsel), for plaintiff.

W. V. Gregory, U. S. Atty., and S. M. Russell, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

PECK, District Judge (for the Southern District of Ohio, sitting by designation in the Western District of Kentucky, for the purposes of the above-entitled cause). Heard upon demurrer to the petition.

From the petition demurred to the following facts appear: The plaintiff is, and was before the passage of the Income Tax Law of 1919 (Acts Feb. 24, 1919, c. 18, 40 Stat. 1057), a judge of a District Court of the United States. In March, 1919, as required by the terms of that act, he made his income tax return, including therein, under

protest, his judicial salary for the preceding year. He thereafter paid the deputy collector his income tax thereon, under protest, with notice of his intention to sue to recover it. He subsequently made the necessary application and appeal to the Commissioner of Internal Revenue for refunder thereof, which were overruled and refused, and accordingly he now sues the deputy collector for the return of the tax.

No question is made as to the regularity of the steps taken preliminary to bringing the suit, and the case turns wholly on the merits. The sole question is whether section 213 of the act of February 24, 1919 (40 Stat. 1065), in so far as it requires the compensation received by judges of the Supreme and inferior courts of the United States to be included within the gross income returned, is contrary to article 3, section 1, of the Constitution of the United States. That section is as follows:

"The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the Supreme and inferior Courts, shall hold their Offices during good behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

The definition contained in section 213 of the act states that the term "gross income"—

"includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employés, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The gross income so required to be returned is subject to certain exemptions and deductions, and the net income thus arrived at is taxed on a graduated scale.

Section 1 of article 3, above quoted, was not affected by the Sixteenth Amendment, declaring that:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration"

—because this amendment has been determined not to extend the power of taxation of incomes to subjects previously exempt, but only to remove the necessity for apportionment with reference to income taxes. Peck v. Lowe, 247 U. S. 165, 172, 38 Sup. Ct. 432, 62 L. Ed. 1049; Brushaber v. Union Pacific R. R., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Stanton v. Baltic Mining Co., 240 U. S. 103, 36 Sup. Ct. 278, 60 L. Ed. 546. Not only is the presumption in favor of the validity of the act, but the question must be free from reasonable doubt to justify

holding to the contrary. Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786.

The constitutional provision referred to (section 1 of article 3) does not exempt the judges from taxation, generally speaking. They are subject to the taxing power equally with other citizens. Indeed, their salaries, in so far as used to defray their living expenses, or otherwise consumed by them, have been laid under indirect taxation by duties, imposts, and excises since the beginning of the government, and if the revenue now exacted by income tax had been raised by the familiar indirect means, the judicial salary would have been, without question, subject thereto in its expenditure, as in the past. Therefore a tax is not invalid merely because it may operate indirectly or incidentally to require repayment to the government of some part of the money paid out as judicial salary.

Since the judge is, as others, subject to taxation, it may be stated that he owes the government his fair share of the burden which the United States is obliged to impose upon its citizens for its support. On the other hand, the government owes to him an undiminished compensation. But these are two independent accounts; neither may be justly said to impair the other.

If a tax were directly laid upon judicial salary, as such, and "because of its source or in a discriminative way" (Peck v. Lowe, 247 U. S. 172, 38 Sup. Ct. 432, 62 L. Ed. 1049), it might, perhaps, fairly be claimed to be a diminution of compensation. But a tax laid upon incomes generally, including judicial salary, without discrimination, at a uniform rate, seems to be nothing other than the requiring of the judge his fair share of the burden aforesaid, measured by his income. His salary is not thereby diminished; his income is merely used as the fairest measure of his tax. The tax is, in effect, imposed upon the citizen in proportion to income.

It is said that Congress is bound by no general rule of equality in the laying of the income tax, that it may classify persons for taxation at pleasure, and that the judges may be put in a class by themselves or in an unfavored class and their salaries taxed, to the destruction of that judicial independence the Constitution unquestionably sought to protect. Federalist, No. 79; 2 Story, Const. § 1628 et seq.; 1 Kent, Com. 293. But there seems to be an inherent, fundamental distinction between equal participation in the general burden of a uniform income tax, and subjection to a discriminative salary tax. The one appears not to be directed against salaries, as such, but to fall only incidentally thereon, and therefore not to be a diminution thereof within the constitutional phrase. The other, merely seeking by classification to reclaim part of that paid out in compensation, might, without injustice, be regarded as a diminution of the salary under the guise of taxation. For the purpose of deciding upon its validity, a tax should be regarded in its actual and practical, rather than in its theoretical, results. Nicol v. Ames (supra) 173 U. S. at page 516, 19 Sup. Ct. 522, 43 L. Ed. 786.

There appears to be no adjudication of this point by any court of the United States. It was, however, the subject of a letter from

Chief Justice Taney to Hon. Salmon P. Chase, Secretary of the Treasury, condemning as invalid a similar tax. 157 U. S. 701.

That a general income tax would fall upon judicial salaries was likewise assigned by Mr. Justice Field as. an additional reason for the unconstitutionality of the income tax of 1894, in a separate concurring opinion, in the case of Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 604, 15 Sup. Ct. 673, 39 L. Ed. 759; but the point was not touched by the opinion of the court, and the unconstitutionality of that act was placed thereby upon entirely different grounds.

There is also an opinion by Attorney General Hoar, addressed to Hon. George S. Boutwell, Secretary of the Treasury, October 23, 1869 (13 Op. Attys. Gen. 161), upon the constitutionality of the act of 1867, taxing salaries of all civil officers of the United States, and concluding that no income tax may be lawfully assessed and collected upon the salaries of the President or any of the judges who were in office at the time the statute imposing the tax was passed.

A similar conclusion was reached by the Attorney General of North Carolina, in a letter to Hon. David M. Furches, Chief Justice for that state, dated December 16, 1902. In re Taxation of Salaries of Judges, 131 N. C. 693, 42 S. E. 970.

The present Attorney General of the United States has, upon full consideration, concluded in favor of the validity of the tax. Opinion of Mr. Attorney General A. Mitchell Palmer to the Secretary of the Treasury, May 6, 1919, 31 Op. Atty. Gen. 475.

It cannot be denied that the foregoing opinions, although not bringing the point under the rule of stare decisis, are entitled to great weight.

In Commonwealth ex rel. v. Mann, 5 Watts & S. 403, the Supreme Court of Pennsylvania determined that an act which assessed upon the salaries of judges a tax of 2 per cent., which the state treasurer, by the provisions of the law, was directed to retain, was contrary to a provision of the state Constitution forbidding diminution of judicial compensation. The terms of the act are to be found on page 415. The tax was not general, but was specifically directed against the salaries of offices held in Pennsylvania, and the court, at page 417, uses this significant language:

"Taxation is an incident of sovereign power, which acknowledges no limits except the discretion of those who use it, unless it be those objects of taxation which for wise reasons have been withdrawn from these general powers. The property of a judge, his income, whether derived from this or any other source, we admit is a proper subject of taxation. His security will then consist in being placed on the same footing with other citizens, and an abuse of them by any will be speedily corrected. Of this the relator does not complain; but he does complain that he, with others, is selected as a special object of taxation, contrary to the charter which he has solemnly sworn to support."

Thus, clearly, this decision was placed upon the discriminative feature of the tax, and the opinion specifically affirms the validity of a tax such as that now under consideration.

In Commissioners v. Chapman, 2 Rawle, 73, the Supreme Court of the same state had previously held that a tax levied upon the defendant for his office as President Judge of a judicial district of

Pennsylvania, by the laws for raising county rates and levies, was not unconstitutional, and the court say (page 77):

"The object of the Legislature was to apportion the public burden according to the ratio of property, and to produce in detail a result approaching as near as possible to that of an income tax—a measure of assessment more equable in the abstract than any other that could be proposed. * * * The Legislature could not constitutionally retrench a part of a judge's salary under the pretext of assessing a tax on it; but, for the bona fide purpose of contribution, a reasonable portion of it, like any other part of his property, may be applied to the public exigencies."

There is nothing irreconcilable in these two decisions. The one, condemning a special tax on salaries, admits the propriety of a general tax on incomes, including the judicial salary; the other upholds the latter form of taxation. The distinction between these two cases would seem to define clearly the boundary line between diminution of salary by special taxation and the taxing of incomes generally, including such salaries.

In State v. Nygaard, 159 Wis. 396, 150 N. W. 513, Ann. Cas. 1917A, 1065, as against a similar constitutional provision, the statute levying an income tax by uniform rule, which fell upon the salaries of judges as upon others, was upheld; but the case was put principally upon an amendment of the Constitution of that state adopted in 1908, authorizing generally the laying of income taxes, from which the court could find no reason for excepting judicial salaries.

In New Orleans v. Lea, 14 La. Ann. 197, an attempted tax by the city of New Orleans upon the salary of a Justice of the Supreme Court of that state, was held void, as contravening a similar constitutional provision. The decision was based upon McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; but the decision there obviously turns upon a different principle, to wit, the power of the state to tax an instrumentality of the government of the United States, and it is worth noticing that the decision went no further than was necessary to protect from taxation the sovereign powers of the United States, and was specifically restricted so as not to extend to a tax paid by the real property of the bank in common with other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland might hold in the institution, in common with other property of the same description throughout the state.

Dobbins v. Commissioners, 16 Pet. 435, 10 L. Ed. 1022, and Collector v. Day, 11 Wall. 113, 20 L. Ed. 122, proceed upon the same principle, or its converse, the immunity of the instrumentalities of the state government from federal taxation, and cannot be said to be a guide in the solution of the question presented in this case.

That income may be taxable, although derived from sources in themselves exempt from taxation, is demonstrated by the decisions in Peck v. Lowe, supra, holding that income derived from the export trade is taxable, and U. S. Glue Co. v. Oak Creek, 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, holding that a state may lay a general income tax including corporate profits derived from interstate commerce. In the latter case (247 U. S. at

page 328, 38 Sup. Ct. 501, 62 L. Ed. 1135, Ann. Cas. 1918E, 748) the court say:

"The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In Crew, Levick Co. v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. 126, 62 L. Ed. 295, we held that a state tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to sections 8 and 10 of article 1 of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the state a part of every dollar received. On the other hand, in Peck & Co. v. Lowe, ante [247 U. S. 165, 38 Sup. Ct. 432, 62 L. Ed. 1049], we held that the Income Tax Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of article 1, § 9, cl. 5, of the Constitution. The distinction between a direct and an indirect burden by way of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden."

It seems, therefore, that the tax which the plaintiff now sues to recover is at most but an indirect or incidental burden upon judicial compensation, resulting from a uniform and general income tax, and is therefore not a diminution of such compensation within the meaning of the Constitution.

The demurrer to the petition must accordingly be sustained.