## Hixon v. City of Philadelphia et al.

*William N. J. McGinniss,* for plaintiff.

*Abraham L. Shapiro,* assistant city solicitor, for defendants.

LEVINTHAL, J., May 24, 1938.—Plaintiff, the owner and operator of an open automobile parking lot, seeks to enjoin the City of Philadelphia from enforcing the tax of "ten per centum of gross receipts from all transactions in or for the parking of automobiles . . . on open park-

ing lots", levied by the ordinance of July 21, 1937 (Ordinances and City Solicitor's Opinions, 1937, p. 391.) Defendant has filed preliminary objections to plaintiff's bill of complaint.

In the case of Samuels, etc., v. City of Philadelphia et al. (C. P. No. 6, June term, 1938, no. 7247), wherein the validity of this tax was also challenged, we decided several of the questions again raised here. We there held, inter alia, that the tax was one for "general revenue purposes", within the authorization of the Act of August 5, 1932, P. L. 45, 53 PS §4613, and that the levy was not unreasonable in its distinction between garages and open-air parking lots, only the latter having been taxed by the city.

It is now contended by plaintiff that the tax is invalid because it discriminates against natural persons engaged in the open parking lot business and in favor of corporations so engaged. The ordinance itself draws no distinction between individual and corporate owners of parking lots. It is argued, however, that because of the decision in the case of Sley System Garages v. City of Philadelphia (C. P. No. 1, June term, 1937, no. 7277, opinion filed March 14, 1938), which declared corporations to be exempt from the parking lot tax, there is, in fact, an improper discrimination against individual operators of parking lots.

There are two questions that now confront us: First, is the ordinance invalid as to corporations? Second, if so, is the ordinance invalid as applied to individuals?

1. In the Sley System case, Judge Parry held that since the Act of 1932, supra, expressly forbids the city to tax subjects taxed by the State, and since the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, 72 PS §3420 (a), already taxed the receipts of all corporations by taxing their net incomes, the city could not legally impose a tax upon the gross receipts of corporate operators of parking lots. This opinion of a learned court of con-

current jurisdiction is, of course, entitled to our respectful consideration, but after careful study we are unable to concur in the conclusion arrived at by Court of Common Pleas No. 1.

The Supreme Court of Pennsylvania, in the very recent case of Blauner's, Inc., et al., v. City of Philadelphia et al., 330 Pa. 340, 342 (1938), upheld the validity of the city sales tax as applied to sales by corporations, and dismissed the argument that, because the State had already taxed corporate net incomes, the Act of 1932 prohibited such a city tax on sales by corporations. Justice Drew, speaking for a unanimous court, wrote:

". . . the sales tax does not duplicate the incidence of the Corporate Net Income Tax Act of May 16, 1935, P. L. 208, the taxable subject matter of which is obviously net income. We have held an income tax to be a property tax (Kelley v. Kalodner, 320 Pa. 180), and the corporate net income tax specifically to be such in Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421. The sales tax and the net income tax vary widely. The former is an excise tax on sales and services; the latter is a property tax upon income from any source. The former is a tax on 'transactions', whereas the latter is a tax on 'property'."

The principle of the Blauner case seems to apply with equal force here, for the parking lot tax and the net income tax vary widely. The former is an "excise tax on . . . services"; the latter is "a property tax upon income from any source." The former is "a tax on transactions" (the ordinance expressly imposes the tax on "gross receipts from all transactions in or for the parking of automobiles or motor vehicles on open parking lots") whereas the latter is "a tax on property". It is true that the city sales tax is levied against the purchaser, whereas the parking tax is levied against the parking lot operator. The Supreme Court, however, in the Blauner case expressly declared:

". . . as we view the case, it would make no difference which party was required to pay; the tax being on the sale itself, if the City Council had the power to make the levy, and it had that power if there was no duplication, it could require either party to the sale to pay the tax."

Aside from the authority of the Blauner case, it seems to us that the city parking lot tax, as applied to corporations, does not duplicate the State corporate net income tax. The former aims to reach gross receipts of parking lots qua parking lots; the latter aims to reach net income of corporations qua corporations. The distinction between gross revenue and net income taxes has been recognized by the United States Supreme Court, which has held the former invalid when levied upon foreign commerce, whereas the latter is valid. Compare Crew Levick Co. v. Pennsylvania, 245 U. S. 292 (1917), with William E. Peck & Co., Inc., v. Lowe, 247 U. S. 165 (1918). That court, in United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 328 (1918), termed the difference "manifest and substantial".

Even if the income tax be considered as levied "for the privilege of doing business" (the phrase used in section 3 of the Corporate Net Income Tax Act, supra), it is not the identical privilege which is the subject of the city parking lot tax. The operator of a parking lot exercises one privilege, that of parking automobiles, and for it he is required to pay a tax to the city on his gross receipts from parking transactions, which is "an appropriate measure of the value of the privilege" of engaging in that business: Western Live Stock et al. v. Bureau of Revenue et al., 303 U. S. 250 (1938). On the other hand, the corporate operator of a parking lot enjoys a two-fold privilege: It conducts a parking lot, and it does so as a corporation, with all the benefits flowing from this type of business association. For the former privilege, the corporation, like the natural person engaged in the same business, is taxed by the city on gross receipts; for the

latter privilege, which the natural person does not enjoy, the corporation pays a State tax on net income.

In our opinion, therefore, the Act of 1932, supra, would not seem to prohibit the city from imposing a tax on gross receipts even as against corporations operating parking lots, since the State has not previously taxed the same "privilege, transaction, subject or occupation".

2. If, however, the ordinance be deemed invalid as against corporations, in conformity with the decision of Court of Common Pleas No. 1 in the Sley case, it does not follow that the tax must be invalid as to non-corporate operators of parking lots.

Plaintiff relies upon the case of Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389 (1928), in which the United States Supreme Court held that a tax levied against corporations and not against natural persons engaged in the taxicab business was unreasonably discriminatory and therefore invalid. It is argued that a tax levied against individuals, and not against corporations, engaged in the parking lot business is similarly discriminatory and consequently invalid.

The Quaker City Cab Co. case has not been expressly overruled, but the Supreme Court of the United States, in the case of Phillips Petroleum Co. et al. v. Jenkins, 297 U. S. 629 (1936), seems to have departed far from its ratio decidendi. Mr. Justice Butler, writing the opinion for a unanimous court, apparently recognized the departure from the Quaker City Cab Co. case, to which he refers in sub-marginal note no. 10, at page 637. It is doubtful whether the Supreme Court would not adopt as its view today the dissenting opinions of Justices Holmes, Brandeis, and Stone in the Quaker City Cab Co. case, as well as the unanimous opinion of the Supreme Court of Pennsylvania which it reversed in 1928: Commonwealth v. Quaker City Cab Co., 287 Pa. 161 (1926).

It is, however, unnecessary to disregard or to refuse to follow the Quaker City Cab Co. case as decided by the Supreme Court of the United States, for the majority

opinion clearly distinguishes the situation there presented from that in the present case. In declaring the levy against taxicab corporations invalid on the ground that it was unreasonably discriminatory in favor of natural persons, the Supreme Court expressly pointed out that the tax could have been "laid upon receipts belonging to a natural person quite as conveniently as upon those of a corporation." In the present case the tax against parking lot operators cannot conveniently be imposed upon corporations, for it cannot be levied against them at all, if the Sterling Act compels their exemption. This affords some basis for classification. See Union Bank & Trust Co. v. Phelps, 288 U. S. 181 (1933), where the fact that a tax could not be levied upon National banks was held sufficient basis for a classification exempting them and taxing only State banks.

Moreover, the court in the Quaker City Cab Co. case, in declaring the tax there invalid, said that that levy was not "in lieu of any other tax". In the present case, however, there are other taxes—capital stock and net income taxes—imposed by the State against the exempted group and not against natural persons. Indeed, it is by reason of such other taxes that corporations are claimed to be exempt from the city parking lot tax.

Therefore, the Quaker City Cab Co. decision, in our opinion, does not control the case at bar.

It is further argued that the State corporate net income tax is considerably less of a burden than the city's gross receipts tax on parking lots, and that therefore there is an unreasonable discrimination against natural persons engaged in the parking lot business, and taxed by the city, as distinguished from corporations thus engaged and taxed by the State. There is no merit, in our opinion, to this contention. If the classification be reasonable, there is no "iron rule" requiring equality of burden. As Mr. Justice Reed, in the recent case of New York Rapid Transit Corp. v. City of New York, 303 U. S. 573 (1938), said:

"Although the wide discretion as to classification . . . often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. . . . Indeed, it has long been the law under the Fourteenth Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it. . . . The rule of equality permits many practical inequalities.' "

" 'The legislature is not required to make meticulous adjustments in an effort to avoid incidental hardships. . . . If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict.' "

In conclusion, it should be noted that section 5 of the Philadelphia ordinance, supra, contains the following very broad severability clause:

"It is the intention of the City Council that if any part or parts, provision or provisions of this ordinance shall be held to be unconstitutional, illegal or invalid, all other part or parts, provision or provisions thereof, shall remain in full force and effect, it being the purpose of the Council that this ordinance would have been passed if such invalid, illegal or unconstitutional part or parts, provision or provisions thereof had not been included herein."

Thus, council has expressly indicated that, in view of the city's grave financial difficulties, it would have enacted the ordinance as against unincorporated parking lot operators alone, if it had known that the Sterling Act barred the imposition of the levy as against corporations. See Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, and Commonwealth v. Schuylkill Trust Co., 327 Pa. 127, 133 (1937), as to the effect of the severability clause.

We therefore conclude that, as applied to plaintiff, the ordinance imposing a 10 percent tax on gross receipts from all transactions in or for the parking of automobiles

on open parking lots is constitutional, and that council had the power to enact it.

And now, to wit, May 24, 1938, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that the preliminary objections to the bill of complaint be sustained, and that the bill be dismissed.